1. PERPETUITIES (§ 6*)—CONSTRUCTION—SUSPENSION OF ALIENATION.

Testator bequeathed to each of three relatives a pecuniary legacy in trust, they to receive the income, and a portion of the legacy at their election to purchase a home. Testator bequeathed the residue of his estate in trust for his mother, the income to be paid to her and at her death, the principal and the accumulated income, if any, to be divided among the previous pecuniary legatees, respectively, on the basis of their previous pecuniary legacies subject to the trust restrictions appertaining thereto. By a codicil he bequeathed to each of two others, both of whom and the mother died before testator, a pecuniary legacy, and made them, on the death of his mother, pro rata residuary legatees on the same terms and conditions. Held, that the estate of those named as beneficiaries to take on the death of testator's mother was accelerated by her death, so that the will should be construed as containing no suspension during her life, nor for any period longer than the life of the person for whom the specific fraction was held in trust; and was therefore not invalid.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 45, 46, 49; Dec. Dig. § 6.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
[1] 25 N. E. 408.

**2.** WILLS (§ 684*)—CONSTRUCTION—TRUSTS.

Testator, having created certain pecuniary trusts for the benefit of each of three former legatees, bequeathed the residue of his estate in trust, to pay the income to his mother for life and at her death to divide the principal and any accumulated income pro rata among the pecuniary legatees. By a codicil he gave to each of two others a pecuniary legacy, and made them on the death of the mother pro rata residuary legatees on the same terms and conditions. *Held*, that there was an attempted trust as to the residuary estate under which the income was applicable to the benefit of the legatees, in the will and codicil in such proportions as their so-called legacies should bear to the aggregate of their legacies.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1615, 1627; Dec. Dig. § 684.*]

**8.** WILLS (§ 862*)—CONSTRUCTION—LAPSED LEGACIES.

Where testator bequeathed the remainder of the residue, in trust, for the benefit of three certain legatees, and by a codicil gave a pecuniary legacy to each of two persons, and provided that they should share in the remainder of the residue, and they died before testator, not only their specific legacy, but their interest in the residue, lapsed; so, whether the specific legacies bequeathed fell into the residue or became the subject of intestacy, the only beneficiaries who were entitled to take under the trust of the residue, if valid, were the original legatees.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2186; Dec. Dig. § 862.*]

**4** WILLS (§ 585*)—CONSTRUCTION—"SHARE."

Testator bequeathed pecuniary legacies to three nieces to be held in trust to pay the income, and to permit each of them to withdraw $10,000 of the principal to purchase a home, of which fund the remainder of the legacies were to remain in trust; and, in case of death of either of them without issue before the death of their aunt H., then the "share" of each decedent in that event should revert to H., and in case of the death of either of the legatees without issue subsequent to the death of H., and prior to the death of their grandmother C. H., their respective shares should revert to the latter. *Held*, that the word "share" as so used was not limited to the income to which the legatee was entitled for life, but included the principal sum of the legacy to which the legatee was entitled, and also her share of the residue of the estate bequeathed to her on the same terms and conditions.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1274–1278; Dec. Dig. § 585.*

For other definitions, see Words and Phrases, vol. 7, pp. 6473–6480.]

Proceeding for the probate of the will of Charles Ferdinand Hoffman, deceased. Probate decreed.

Whitridge, Butler & Rice (Edwin T. Rice and Benjamin A. Morton, of counsel), for proponent Margaret Hoffman and for Carolyn Hoffman.

Miller, King, Lane & Trafford (Edwin T. Rice and Benjamin A. Morton, of counsel), for Union Trust Co.

Charles W. Dayton, Jr. (Edward D. Bryde, of counsel), for contestants Rosalie A. Avery, Inez Hoffman Spagnolo, and Joseph L. Bourdette.

J. Brownson Ker, special guardian for infants Grace Hoffman, Bertha Hoffman, and Myrtle Hoffman.

Clarence P. Avery, in pro. per.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

KETCHAM, S. The construction of the will of the testator is required by answers filed in the probate proceeding. The portions of the will necessarily involved are as follows:

"Article I. I grant and bequeath unto by niece Margaret Hoffman seventy-five thousand dollars ($75,000).

"Article II. I grant and bequeath unto my niece Carolyn, or Carrie Hoffman, fifty thousand dollars ($50,000).

"Both the foregoing legacies shall be held in trust as herein provided in article V.III and no husband of the legatees nor any relative or person shall have any control whatsoever over either the principal or income thereof. The income shall be paid only to said legatees respectively and an amount of ten thousand dollars ($10,000) of the principal may be paid to each of them if they so elect when they attain the age of 30 years, to purchase and furnish a home severally to be held in their own several names and right, free from any other control whatsoever.

"The remainder of their respective legacies shall remain in trust as provided above as a protection or provision in their old age, and in case of the death of either of them without issue, before the death of their Aunt Inez Hoffman legatee under article IV herein, then the share of such decedent shall in such event revert to her the said Inez Hoffman. And in case either said nieces should die without issue subsequently to the death of their aunt the said Inez Hoffman and prior to the death of their grandmother, Caroline Hoffman, then in such case their respective shares shall in like manner revert to their grandmother, Caroline Hoffman.

"Article IV. I grant and bequeath unto Henrietta Louisa Hoffman, commonly known to the family as Inez Hoffman, the sum of one hundred and twenty-five thousand dollars ($125,000) with the proviso that the same shall be placed in trust as herein provided in article VIII and the income thereof be paid to herself only, no relative of hers nor any husband that she may ever have, nor other person shall have any control whatsoever over either the principal or income hereby devised, with this proviso however that she may if she wish draw not exceeding ten thousand dollars ($10,000) with which to purchase and furnish a home for herself to be held in her own name and right, free from all other control whatsoever. In case of her death without issue and prior to that of her mother, all her interest therein shall revert to her mother. I furthermore hereby transfer and make over to the said Inez Hoffman, all my right, title and interest in and to the estate of my mother Caroline Hoffman in the city of New Orleans, state of Louisiana.

"Article VI. I make and appoint my mother Caroline Hoffman, residing in the city of New Orleans, state of Louisiana, my residuary legatee, the amount to be placed in trust as herein provided in article VIII for her sole benefit, and the income thereof to be paid to her without the control of any other person whatsoever, the intention being to provide her with funds in her old age against all possible contingencies. At her death, the principal and any accumulated income there may be, shall be divided pro-rata between the legatees named in articles I, II and IV herein respectively upon the basis of their respective legacies herein and to be subject to the same trust restrictions stated herein appertaining to their several legacies hereunder."

By article VIII the will appoints a trustee for all the trusts created herein, "with the confident belief that the provisions of this my last will and testament will be faithfully and conscientiously administered and that my legatees hereunder, who are all wholly ignorant of sound business principles or methods, may receive wise counsel and advice on financial matters affecting their interests."

By a codicil the sum of $25,000 was substituted for the amount bequeathed in article IV to Inez Hoffman. The codicil also contains two specific bequests to Wilhelmina Bourdette of $35,000, and to John F. Hoffman of $10,000; and the last two legatees are the subject of the following language in the codicil:

"And I hereby make these two legatees, upon the death of my mother, pro rata residuary legatees under the terms and conditions as set forth in article VI herein, as additional residuary legatees."

Caroline Hoffman, named in paragraph 6 of the will, and Wilhelmina Bourdette and John F. Hoffman, named in the codicil, all died before the testator's death. It is admitted that the estate amounts to $2,300,000.

The mother, named as the primary beneficiary in article VI, having died before the testator's death, the estate, if any, of the persons named as beneficiaries to take upon her death is therefore accelerated, and the will is to be read as if it contained no suspension during the mother's life and as if its direction were that the residue should be disposed of in the manner indicated in articles I, II, and IV with respect to the specific sums therein mentioned, subject to any modification to be derived from the codicil.

There is, then, an attempted trust as to the residue, under which the principal thereof is devised to the trustee in trust to apply the income to the benefit of the persons named as legatees in articles I, II, and IV of the will and the persons named as legatees in the codicil, but of such proportions as their so-called legacies shall bear to the aggregate of their legacies. The persons named in the codicil as participants in the supposed trust having died before the testator's death, their legacies, as well as their interests in the residue, lapsed; and, whether their legacies fall into the residue or are the subject of intestacy, it results that the only beneficiaries who may in the first instance take under the trust, if valid, are the persons named in articles I, II, and IV.

Calculation shows that the proportions in which the income is assigned to them are one-half, one-third, and one-sixth.

It is argued that the beneficial interests of these legatees are undivided, that the aggregate estate is directed to be held in solido throughout their successive lives, and that the suspension for three lives is thus made possible. No such result would follow if within the contemplation of the will there is a division of the residue in the hands of the trustee in the proportions of one-half, one-third, and one-sixth and each portion thus ascertained is made the subject of a separate trust. "Every estate granted or devised to two or more persons in their own right shall be a tenancy in common unless expressly declared to be in joint tenancy." Real Property Law (Consol. Laws, c. 50) § 66. This provision and its predecessors have been frequently applied to conditions substantially such as are found in the will under examination. Everitt v. Everitt, 29 N. Y. 39, 72; Stevenson v. Lesley, 70 N. Y. 512, 515; Monarque v. Monarque, 80 N. Y. 320, 324; Wells v. Wells, 88 N. Y. 323, 332; Matter of Verplanck, 91 N. Y. 439, 443; Vanderpoel v. Loew, 112 N. Y. 167, 177, 19 N. E. 481; Schermerhorn v. Cotting, 131 N. Y. 48, 56, 29 N. E. 980; Locke v. Farmers' L. & T. Co., 140 N. Y. 135, 144, 35 N. E. 578; Corse v. Chapman, 153 N. Y. 466, 473, 47 N. E. 812. These cases all show the solicitude of the law to preserve the testamentary purpose, if possible, and, in order to avoid the suspension of the power of alienation, to find by every fair and reasonable art of construction a division of the estate into distribu-

tive shares. In some cases there is displayed a determination to save the will even against its adverse language.

In the cases of Verplanck, 91 N. Y. 439, and Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481, there were express requirements in the will that the estate in the hands of the trustee should not be separated but should be held intact and indivisible; yet, despite language which explicitly solidified the entire estate for the period of the trusts, the beneficial estates were held to be distributed into as many parts as there were beneficiaries. Indeed, in the Vanderpoel Case, though the will designated the parts as "undivided," it was held that these "undivided" parts, however held by the trustee, were to be construed as separate and divided among the beneficiaries for the purpose of saving the will. In the instrument under inquiry now, not only is there no expression declaring or intimating that the interests of the beneficiaries are to be held in joint tenancy, but there is a provision that, upon the death of the mother, the principal of the trust "shall be divided between the legatees named in articles I, II and IV * * * respectively," subject to the trust provisions.

There is then a separate trust as to each of the fractions of the residue which is subject to no limitation or suspension for any period other than the lives of the persons for whom the specific fraction is to be held in trust. The validity of these three trusts may be tested by tracing the destination of any one of the three distributive funds. As an example controlling all, the trust for Margaret Hoffman may be selected. In her case one-half of the residue is limited upon the same "trust restrictions" as pertain to the so-called legacy to her of $75,000, in the first article. The "restriction" in this regard is that the income shall be paid only to the beneficiary and without control of any person, that a portion of the principal of the trust may be applied to a prescribed use, and that the remainder of the principal shall remain in trust as a protection or provision in the old age of the beneficiary.

While not expressed, there is a sound implication that the income is payable to her during her natural life. The direction that the income shall be paid to her, amplified by the requirement that the remainder of the principal shall remain as a protection and provision in her old age, can only mean that it shall be payable during her life. Nor can it be that the testator designed a payment of income in old age without embracing in his purpose its continuance so long as age continued.

But it is said that beyond the life of Margaret there is a suspension for more than one life to follow hers. The argument is based upon the language by which it is directed that upon the death of Margaret the "share" of Margaret shall revert to Inez Hoffman. It is contended that the only "share" which can be called the "share" of Margaret is her right to receive the income, and that, not only as to the legacy of $75,000, but as to her interest in the residue, the gift over upon her death would bestow upon the next taker only the right to income, and would still leave the principal in the hands of the trustee for a period beyond the first life. It is hard to see that under this

view, if accepted, there would be a suspension for more than two.
lives in being at the time of the testator's death for the right of the
second taker to receive the income could not survive his own life and
the trust would then end.  The "share" intended by the will, however,
is not the mere right to receive income.  The context indicates that
this "share" of the decedent beneficiary, which is to revert to another
upon her death, is the principal fund assigned in the will as the
"share" to which she bears a beneficial relation.

This principal fund is first "granted and bequeathed" to her by
words, which, if unqualified by the subsequent trust, would vest the
principal in her.  However the testator's employment of language
may differ from legal usage, it still remains to evidence his intention
that the legatee, as he calls her, is to have and enjoy the legacy, as
he calls it, to the utmost, consistently with the trust restrictions.  It is.
her legacy which is held in trust.  After the payment to her of $10,-
000 for her home, it is not merely the principal of the trust fund, it
is "the remainder of her legacy," which is to remain in trust.  When
after this conception of her personal ownership of the fund as her
legacy (however impossible to give legal effect to the conception) the
testator slips into the use of the word "share," he must be regarded
as intending by the word "share" the same thing as was in his mind
when he used the words "remainder of her legacy."  In the provision
that the "share" "revert," the testator gave slight support for the con-
clusion that the word "share" in his mind stood for the principal
fund; for the principal could "revert," while the beneficiary's mere
right to receive income must cease with her death and strictly could
not "revert."  Thus the trust was such that upon the death of Mar-
garet it ceased, and there was no suspension beyond her life.

It is not within the present inquiry to determine upon whom the
principal fund created by article I, or the residue mentioned in article
VI, is to be devolved in case of the first beneficiary's death, with or
without issue.  The ultimate destination of the principal is not ma-
terial, except so far as its discussion is necessary to the determination
of the validity of the trust.

To that end it is enough that upon the death of the first beneficiary,.
the fund escapes from the trust restriction and finds a legal owner
whose power of alienation is untrammeled.  Matter of Mount, 185
N. Y. 162, 77 N. E. 999.  If these views are correct, there is a valid.
devise in trust of the $75,000, as well as of one-half of the residue,
to the trustee to pay income to Margaret Hoffman for life, and upon
her death to make over the subject of the trust to persons who may
then be ascertained.  The same conclusion must follow, with variation
of amounts and proportions, in respect to the provisions for Carolyn
Hoffman and Inez Hoffman.

Upon the failure of the legacies in the codicil to Wilhelmina Bour-
dette and John F. Hoffman, the amounts of their legacies became part
of the residue.  "A general residuary clause * * * will include
legacies which were originally void, either because the disposition
was illegal, or because, for any other reason, it was impossible that
it should take effect; and it includes such legacies. as may lapse by

events subsequent to the making of the will. It operates to transfer to the residuary legatee such portion of his property as the testator has not perfectly disposed of." Riker v. Cornwell, 113 N. Y. 116, 124, 20 N. E. 602, 604. The cases cited in support of the claim that intestacy results from the lapse of these legacies all arose upon gifts of fractional shares in the estate to several persons in common, and not jointly. Among them Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945, is typical. There the residue was given to three sisters named. Upon the death of one before the testator's death, it was held that her share did not vest in the surviving sisters, since the gift was not joint and was not a gift to a class.

The questions there considered could not arise where, as in the case at bar, the legacies were of specific sums of money; and, while the Kimberly Case must be accepted as authority that a gift of a part of the residue which fails does not like other lapses become part of the residue, there is no occasion to widen its application.

The will is admitted to probate, and the decree should embody a construction of the will in accordance with these conclusions.

Probate decreed.