George W. Pratt, S.
Construction of paragraph fourth of decedent’s Avill is sought by the petitioner executor. In order to construe such paragraph it is also necessary to consider paragraphs second and third. These paragraphs read as follows :
‘ ‘ second : I give, devise and bequeath to my son, Harry Quigley, and my daughter, Margaret Quigley Minnear, share and share alike, all of my property, real, personal and mixed, of Avhich I die seized and possessed and Avherever situate.
‘ ‘ third : It is my desire and I direct that my son, Harry Quigley, shall have the right, if he so desires, to purchase the business now operated by me in the Quigley Block at Painted Post, New York at ninety per cent (90%) of the value of such business as shoAvn upon the inventory for the income tax return at the end of the previous year.
*321 “■ fourth : It is my desire and I likewise direct that my son, Harry Quigley, shall have the right, if he so desires to purchase the Quigley Block located on the southwest corner of Hamilton and West Water Streets in the Village of Painted Post, New York at the agreed price and value of Six Thousand Dollars ($6,000.00). In case he desires to purchase the said building, as aforesaid, he shall receive a deed thereof and is to give a bond and mortgage to Margaret Quigley Minnear in the sum of Three Thousand Dollars ($3,000.00), with interest at five per cent, the principal sum to be payable within five years.”
Extrinsic evidence has been permitted to show the conditions at the time of making the will in 1936 in order to determine the intention of the testatrix. Ordinarily the circumstances are those which existed at the time the will was made. (Cornell v. Van Wormer, 134 App. Div. 767, 770; Odell v. Uhl, 116 N. Y. S. 185.)
But this is not always so. In the case of Matter of Winburn (139 Misc. 5, 10) Surrogate Slater said: “ The will does not speak as of the time of its execution but speaks as of the time of the death of the testator. Intention of the testator is to be determined from the language of the will as construed in the light of facts and circumstances.” (See, also, Matter of Hoffman, 201 N. Y. 247, 255, modfg. 140 App. Div. 121, affg. 65 Misc. 126.)
Two questions here present themselves. First, is the right given to Harry Quigley under paragraph fourth a purely personal right to him? Second, is there anything in the will which shows a contrary intention to overcome the inference or presumption given by section 29 of the Decedent Estate Law?
Petitioner in urging that such right is purely personal, cites Matter of Champion (15 N. Y. S. 768). In that will the testator gave John Donohue the first refusal to rent his store at $30 per month during the lifetime of his wife and upon her death to have the first opportunity to purchase such real estate under conditions set forth in the will, among which was payment of a legacy of $1,000 to Mary McCutcheon. Mary McCutcheon died before the testator and the Surrogate held that not being a child or other descendant the $1,000 legacy to Mary McCutcheon lapsed. John Donohue thereupon claimed that under the will his relation to the property is that of a devisee and that the lapsed legacy of Mary McCutcheon sank into the land to his benefit. In the residuary clause, John Donohue was also bequeathed $1,000 and the Surrogate held that his interest was a beneficial right and privilege and that he must take by deed from the executors and not by the will; that he did not receive a beneficial gift of the prop *322 erty charged with the payment of a mortgage and legacy as mentioned.
It is pointed out in the ease at bar that Harry Quigley had predeceased the testatrix and left two children him surviving.
Petitioner also, in support of her position cites Matter of Hauser (50 N. Y. S. 2d 709). In that will the testator gave and granted to Robert J. Hewson the exclusive right to purchase his real property at any time within one year after his death for whatever sum said property shall have been appraised by his appraisers. Surrogate Taylob, in construing that will, held (p. 710) that while it was “ a beneficial right or privilege ” it was also an option to purchase and he points out that this option did not prevent the vesting of title in the residuary devisee but that this would be subject to the exercise by the executrix of the imperative power of sale necessarily comprehended within the paragraph construed. In that will the executor was given a general power of sale. The Surrogate held that this did not suspend the power of alienation and did not violate the perpetuities rule, the will being challenged on those grounds. Apparently Hewson was not a descendant and section 29 of the Decedent Estate Law was not involved in the Hauser case. The question there involved was purely under section 42 of the Real Property Law on the suspension of the power of alienation which at that time was two lives in being with a contingency for minors.
The Surrogate in construing the Hauser will and in determining that the suspension of alienation was not unlawful reasoned that the testatrix intended to give the right of purchase to Hewson personally because otherwise the “ Ninth” clause of the Hauser will, in which there was a power of sale, would be more or less surplusage. The Surrogate also pointed out (p. 712) that it was not stated that the option was to be given to him ‘“his distributees and assigns ’ nor are there any other words indicating in the slightest degree that this option may be assigned or disposed of by Hewson in any manner, testamentary or otherwise. ’ ’
It must be pointed out in the case at bar that in construing a will, presumption exists that the draftsman of the will was acquainted with the provisions of section 29 of the Decedent Estate Law, and such knowledge was imputed to the testatrix. (Matter of Northrip, 168 Misc. 542, revd. 258 App. Div. 71, aFfd. 282 N. Y. 797; Matter of Depeirris, 110 App. Div. 421; Matter of Riecke, 165 Misc. 566.)
Anri it has also been held that the testatrix is presumed to have had knowledge of all the statutory provisions applicable, namely, section 29 of the Decedent Estate Law and section 202 *323 of the Surrogate’s Court Act. (95 C. J. S., Wills, p. 901; Matter of Greenberg, 141 Misc. 874.)
Section 29 of the Decedent Estate Law creates only an inference or presumption of intention of the testator to benefit a descendent of a legatee, and is inapplicable where the testator’s instrument gives evidence of a contrary intention. (Matter of Loeb, 34 N. Y. S. 2d 65, 67; Matter of Agrella, 175 Misc. 456.)
It has been held that options for the purchase of real property, though exercisable during a period not measured by two lives in being, do not suspend the absolute power of alienation, where there are persons in being who, by united action, can convey an absolute fee in possession. (Epstein v. Werbelovsky, 193 App. Div. 428, affd. without opinion 233 N. Y. 525.)
The question of suspension of alienation having been here raised indirectly by petitioner it is held it does not apply, there being persons in being who by united action could convey an absolute fee.
There is no doubt that had the son, Harry Quigley, survived the testatrix the provisions of paragraphs third and fourth of the will could be enforced by him. Unless a contrary intention is shown in the will to overcome the inference or presumption given by section 29 of the Decedent Estate Law, the right would not be a purely personal one but would be descendable under such statute. The facts here are, therefore, distinguishable from those in both the Hauser and Champion wills.
This court finds and holds that the right given to Harry Quigley under paragraph fourth of the will is what is generally known as an option. There appears to be no reported case which passes directly on an option such as this which involves a descent under section 29 of the Decedent Estate Law.
The case of Metcalf v. Crystal Brook Park Assn. (63 App. Div. 445) also urged by petitioner as authority for holding the option as a personal right is also readily distinguished from the case at bar. There Justice Sewell, speaking for the Appellate Division, Second Department, held (p. 446) that a construction as not being personal * ‘ requires something to be inserted that her testator never assented to. He used no words which necessarily connected the privilege granted with the occupation or enjoyment of any land owned or devised by him. There is nothing in the will to indicate that the testator intended to connect the privilege granted with another tenement. ’ ’ That the words used *1 have no reference to any distinct piece or parcel of land to be benefited by the grant or privilege ” (p. 447). And Justice Sewell also held that the grant was without words of inheritance which were then necessary and that ‘ ‘ the omission of them in *324 granting the privilege must be construed as evidence of his intention to limit the grant to the lifetime of Nancy. The whole instrument shows an unmistakable intention that the privilege should not be permanent ’ ’ (p. 447).
Analyzing the case at bar in the light of the foregoing, we find there is no power of sale; that the premises described in paragraph fourth of the Quigley will are definitely described; and words of inheritance, the lack of which petitioner urges are significant, are not now needed. ( Eeal Property Law, § 240, subd. 1.)
Further analysis shows definitely that the testator intended to prefer Harry over his sister Margaret, by also giving him the further right in paragraph third of purchasing the drug business operated by her in the same Quigley Block, which the testimony shows Harry was carrying on for her at the time of the making of the will. Her husband had been a druggist in that block, she had inherited the business and apparently wanted Harry or the family to continue it and preserve the family name and reputation in such drug business. (Matter of Beckmann, 158 Misc. 706.)
Where the general testamentary purpose can be ascertained, it is given great weight in the interpretation of the language used by the decedent and courts many times have based their decisions upon the dominant purpose evidenced by the decedent no matter how inept the language or how ambiguous or obscure or uncertain it may be. (7 Warren’s Heaton, Surrogates’ Courts, § 18, par. 15, subd. [a], p. 149, and cases cited.)
And when two or more clauses in a will are irreconcilable, as paragraph second is with paragraphs third and fourth, so that they cannot possibly stand together, the latter provisions shall be considered as indicating a subsequent intention and prevail, unless the general scope of the will leads to a contrary construction. (7 Warren’s Heaton, Surrogates’ Courts, § 19, par. 4, subd. [d], p. 158 and cases cited.)
Surrogate Dillon in Matter of Schaertl (207 Misc. 406), held that the words “ if he outlives me ” evidenced a contrary intent and section 29 of the Decedent Estate Law was therefore inoperative and not applicable.
The intention that a descendent shall not take under section 29 of the Decedent Estate Law must be clearly expressed in the will. (Matter of McKeon, 182 Misc. 906.)
Petitioner argues that the provision in paragraph fourth that Harry, if he desires to purchase the Quigley Block, was to give back a bond and mortgage to Margaret for $3,000, under *325 terms therein set forth, was personal with him and showed a contrary intention.
We cannot agree with such interpretation. The provision for a bond and mortgage was a concession to the financial condition of Harry which his mother, the testatrix, who was associated with him in business, must have known at the time of the making of the will. It did not preclude a cash payment, and if Harry’s two children, who would take if section 29 of the Decedent Estate Law is invoked, wished to take advantage of that provision, certainly there is ample security in the property under the specified terms of such bond and mortgage.
Section 29 of the Decedent Estate Law applies to “ any estate.” If an option has any value at all, it becomes an “ estate ” within the purview of such section. Decedent’s dominant purpose was to have the family drug business continued.
This court holds that there was no clearly expressed contrary intention and that section 29 of the Decedent Estate Law is applicable.