OPINION OF THE COURT
Joseph S. Mattina, S.
This matter was originally brought before the court by Norma S. Stetler, a beneficiary under paragraph “Fourth” of the decedent’s will dated November 8, 1982, which was admitted to probate on December 6, 1982. In her petition filed on March 19, 1992, some nine years after probate, she sought to compel an accounting by the coexecutors, payment of her bequest, and also asked the court to revoke the letters of Carol J. Stephens, now known as Carol J. Cecala.
Issue was joined by answer filed with the court on May 28, 1992 and subsequently extensive pretrial negotiations took place from November 1992, through January 1994, at which time the matter was adjourned generally after the court was verbally informed that the petition was being withdrawn. No formal withdrawal was ever filed by the petitioner, who died on July 29, 1994.
By letter request dated January 30, 1996, the matter was reinstated to the court’s pretrial calendar on March 7, 1996 after an informal attempt to settle the matter was made by new counsel representing the heirs of Norma Stetler and new counsel representing Carol J. Cecala.
After some additional pretrial conferences, the respondent, Carol J. Cecala, moved to dismiss the petition.
To date, no papers have been filed with the court to formally substitute John Scott Stetler, executor of the estate of Norma Stetler, as petitioner in this action, nor have the said John Scott Stetler and his sister, Terry Woldridge, filed a petition on *471 their own behalf as successors in interest to their mother, Norma Stetler, to receive the bequest under paragraph Fourth of the will.
However, on June 7, 1995, a substitution of attorney form was filed with the court, signed by both John Scott Stetler and Terry Woldridge.
The court is of the opinion that the filing of this form can also be considered as constituting a substitution of John Scott Stetler, as executor of the estate of Norma Stetler, in place of the now deceased original petitioner, but it does not constitute substituting and/or including John Scott Stetler and Terry Woldridge, individually, as petitioners in this action so as to allow them to argue their own possible standing or rights under the renunciation executed by Norma Stetler. Ordinarily, for them to appear in that capacity, it would be necessary for them to file their own petition.
Despite all of the negotiations and posturing throughout the pretrial conferences over the rights of Norma Stetler under paragraph Fourth of the will and the possible effect of the renunciation she executed on June 6, 1985, the only matter presently before the court is a motion to dismiss the original petition of Norma Stetler.
However, in reaching a decision on the motion to dismiss, the court believes it to be necessary to determine not only the nature of the bequest to Norma Stetler but also the validity and effect of her renunciation. In making such determinations, the individual rights of John Scott Stetler and Terry Woldridge would be affected since they may have received an interest in their mother’s bequest through the application of EPTL 2-1.11 and 3-3.3, and they should be made parties to this proceeding so that any adjudication of this matter will be binding on them as well.
Accordingly, the court will treat the substitution of attorney form as also constituting a notice of appearance on behalf of each of them individually, particularly since the memorandum of law and the affidavits filed on their behalf argue the position of their individual interests in this matter as well as that of Norma Stetler.
If the court did otherwise and denied them individual standing in this matter, the decision rendered herein might possibly be ruled as not being res judicata as against them if they should bring another proceeding based on the same facts.
To determine whether Norma Stetler had standing to bring the initial proceeding or whether the executor of her estate has *472 status to continue this proceeding commenced during her lifetime, it is first necessary for the court to determine the nature of the bequest given to her under paragraph Fourth, which states: “I am the sole proprietor of a business known as The Village Jeweler presently located at 676-680 Main Street, East Aurora, New York. I give and bequeath to my wife, carol j. Stephens, subject to the following bequest to my sister, all of my right, title and interest in and to the inventory, insurance, bank accounts, accounts receivable and contracts of said business. I give and bequeath to my sister, norma stetler, who has managed said business for me for a number of years, the right to continue said business as The Village Jeweler and to enjoy the good will of said business. I also give and bequeath to my said sister also the use of all display cases and other personalty on and about the premises which are presently being used in connection with the business and the right to purchase from my wife at cost all other assets of said business, minus its liabilities including, but not limited to, inventory, insurance, contracts, bank accounts and accounts receivable.”
It would appear from reading the paragraph that the bequest was threefold.
First, she was given “the right to continue said business as The Village Jeweler and to enjoy the good will of said business.”
Second, she was given “the use of all display cases and other personalty on and about the premises which are presently being used in connection with the business”.
Third, she was given “the right to purchase from my wife at cost all other assets of said business, minus its liabilities including, but not limited to, inventory, insurance, contracts, bank accounts and accounts receivable.”
The questions to be resolved are what is the true nature of each of these seemingly separate and distinct bequests.
The first bequest would seem to be the granting of a right to Norma Stetler to assume the operation of the business and continue to do business under the name “The Village Jeweler”. While no time limit in which to exercise such a right is mentioned in the will, it can be implied that some action to exercise that right must be taken within a reasonable time after the will is admitted to probate or that right is forfeited. Such action would be exercising the right to purchase the business assets as granted by the will and negotiating a fair rental for the business property with the owner or, in the alternative, seeking a new location for the business and purchasing new *473 inventory. A third option could possibly have been to relinquish this right and perhaps negotiate a fair price for the good will or some other form of compensation for surrendering her rights.
Since the spouse, Carol J. Cecala, after the death of her husband was the owner of the business property and the bulk of the assets of the business, she was free to operate a similar business at the address, albeit under a different name than “The Village Jeweler”, or she could request Norma Stetler to relinquish her right with or without payment. That may have been what the parties contemplated happening by the execution of the renunciation on June 6, 1985. The court will address the renunciation and its possible effect later in this decision.
Respondent argues that the granting of the first part of the bequest is in the nature of a right of first refusal or option, and cites Matter of Passanisi (124 Misc 2d 326) in support of this position. Respondent further argues that by the decedent prefacing the bequest with the language “I give and bequeath to my sister, norma stetler, who has managed said business for me for a number of years” evidences his intention to make this bequest personal and inalienable to his sister alone and that if she chose not to accept the option or right by renunciation or otherwise, that it would lapse and not pass to her issue under the antilapse statute, EPTL 3-3.3, on the theory that the will provided otherwise and that the right would pass under the residuary clause of the will.
In Matter of Quigley (37 Misc 2d 320, 322-323), the court spells out the presumption of knowledge of the statutory provisions that is imputed to a testator as they may affect the provisions of a will in the following language:
“It must be pointed out in the case at bar that in construing a will, presumption exists that the draftsman of the will was acquainted with the provisions of section 29 of the Decedent Estate Law, and such knowledge was imputed to the testatrix. (Matter of Northrip, 168 Misc. 542, revd. 258 App. Div. 71, affd. 282 N. Y. 797; Matter of Depeirris, 110 App. Div. 421; Matter of Riecke, 165 Misc. 566.)
“And it has also been held that the testatrix is presumed to have had knowledge of all the statutory provisions applicable, namely, section 29 of the Decedent Estate Law and section 202 of the Surrogate’s Court Act. (95 C. J. S., Wills, p. 901; Matter of Greenberg, 141 Misc. 874.)
“Section 29 of the Decedent Estate Law creates only an inference or presumption of intention of the testator to benefit a *474 descendent of a legatee, and is inapplicable where the testator’s instrument gives evidence of a contrary intention. (Matter of Loeb, 34 N. Y. S. 2d 65, 67; Matter of Agrella, 175 Misc. 456.)” (Emphasis added.)
While Passanisi (supra) deals with real estate, the respondent advances the argument that the rationale of the case should apply equally to personal property rights as well.
That court characterizes a testamentary option to be “peculiarly personal” in the sense of “being neither alienable during life nor inheritable or descendible in a particular case”. (Matter of Passanisi, 124 Misc 2d, supra, at 328.)
The court also cites In re Hauser’s Will (50 NYS2d 709, 712), which states: “It should be mentioned, too, that this option to Hewson is not stated to be given to him “his distributees and assigns’ nor are there any other words indicating in the slightest degree that this option may be assigned or disposed of by Hewson in any manner, testamentary or otherwise. Options of this nature are peculiarly personal. Metcalf v. Crystal Brook Park Ass’n, 63 App.Div. 445, 71 N.Y.S. 537; 2 Davids New York Law of Wills, p. 1271; 2 Page on Wills, p. 239; 2 Simes, Law of Future Interests, § 512, p. 382.”
The court then goes on to say:
“However, the characterization of such interests as ‘personal’ should not necessarily be equated with preclusion of a substitutional gift of the beneficial interest to another in the event of the predecease of the intended beneficiary. In Matter of Quigley (37 Misc 2d 320), which appears to be the sole reported decision in this State addressing the question of what becomes of these interests in land when the person intended to receive the benefit has predeceased the testator, the Surrogate determined that the privilege lapses or goes to an alternate taker depending simply upon the particular testator’s intent, whether it be express or imputed by statute.
“Matter of Quigley (supra) is instructive not only for the enunciation of the general principle that a case-by-case determination is in order rather than any hard and fast rule, but also, in view of the rather striking similarity of its facts to those presented in the case at bar, for the concrete application of the principle.” (Matter of Passanisi, 124 Misc 2d, supra, at 328.)
The second part of the bequest involved “the use of all display cases and other personalty on and about the premises which are presently being used in connection with the business”. (Emphasis added.)
*475 Clearly, the language evidences the giving of a “use” of the property, only, and the ownership of the property must therefore rest in another. In this case, since no specific clause gave ownership of the property to another specifically named individual, ownership must have passed to Carol J. Cecala under the residuary clause of the will.
Use of property can be granted for a specified period, for life, for a period measured by the happening of a future event, or the use itself can be contingent upon the happening of a future event. In this situation, the court is of the opinion that the intention of the testator was that the use does not spring into fruition until the option to continue the business is exercised and that the use only continues as long as Norma Stetler operates the business. This conclusion is based on the reading of paragraph Fourth in its entirety in order to glean the true intent of the testator, particularly since the language limited the personalty involved to that “used in connection with the business”.
The third part of the bequest is clearly an option to purchase the remainder of the assets of the business, i.e., inventory, insurance, contracts, bank accounts and accounts receivable, from Carol J. Cecala, who was bequeathed ownership of these assets directly by operation of paragraph Fourth.
If Norma Stetler only had a right or option to continue the business, then that provision of the will did not convey any proprietary interest to her, and the business interest was an asset of the estate which would ultimately pass to the surviving spouse under the residuary clause if Norma Stetler failed to exercise the option.
Carol Cecala would have a vested interest subject to divestment by the actual exercise of the option in the same manner that the assets of the business (other than the display cases and personalty in which she had a fully vested interest subject to a possible use by Norma) were vested in the spouse by specific bequest under paragraph Fourth subject to divestment by the exercise of the option to purchase given to Norma.
The main reason that the court can see for separating the two options is that the testator did not want to require his sister to pay for the value of the good will and name of the business because she was instrumental in building the value of that interest as the operating manager of the store. To give her merely an option to buy the business would have required those assets to be assigned a value as part of the purchase price, something that she had contributed her efforts to build. Since *476 valuation of good will and the right to use the name is not as readily ascertained as the value of other business assets, an additional reason for treating the options separately could have been to avoid this valuation problem.
By giving Norma Stetler the option in this manner, it would also give her more flexibility in determining whether she wanted to buy the rest of the assets from the spouse or to set up an entirely new operation at the existing location or at a new location. In addition, it would enhance the value of her option enabling her to negotiate a higher dollar value for relinquishing her option. Of course, if the option was personal to her alone, the only party with whom she could negotiate would be the person whose interest would be accelerated if she defaulted in exercising the option. In this case it would be the residuary beneficiary, Carol J. Cecala.
On the other hand, if the option was not given to her personally, she would have the right to sell or convey the option to a third party.
Ordinarily, an option is granted for a fixed period of time, but there appears to be no time limit specified in the will for exercising the right to continue the business. However, when we examine the option to purchase business assets from Carol J. Cecala, the will states “the right to purchase from my wife at cost”. It would be unreasonable to assume that the option to purchase the assets was unlimited in duration and that Carol Cecala would be forced to sit idly by for an extended period of time and wait for Norma Stetler to make up her mind whether or not to continue the business. There is the implication that this decision must be made in a relatively short period of time so that Carol Cecala could decide what she wanted to do with the assets if Norma did not choose to exercise the option. Whatever the value of the good will or the value of the business as a going concern at the time of the decedent’s death, such value would be rapidly dissipated if the store closed even temporarily.
The court is of the opinion that the right to continue the business vested in Carol Cecala subject to the exercise of the option by Norma Stetler and that it was prudent action on her part to continue the business for a reasonable period of time after probate of the will to enable Norma to make a determination as to whether or not to exercise the rights granted to her under paragraph Fourth.
Now the court turns its attention to EPTL 2-1.11 and the effect of Norma Stetler’s execution of a renunciation of her “bequest” under paragraph Fourth of the will and how EPTL 3-3.3 applies to this matter.
*477 In Matter of McKeon (182 Misc 906, 908), the court states the purpose of Decedent Estate Law § 29, the predecessor to EPTL 3-3.3, as follows: “The purpose of section 29 was to modify the common-law rule that a legacy lapsed when the legatee died before the testator. It changed the rule in a case where the legatee was in the specified class of close relationship to the testator and in such case provided for the substitution of the descendants of the legatee as the recipients of the gift. The statute was not intended to nullify the right of the testator to select the objects of his bounty and to specify the conditions and limitations upon any legacy. (Pimel v. Betjemann, supra; Matter of Neydorff, supra; Matter of Agrella, supra; Matter of Loeb, supra.) Tt was assumed that in making a gift to a parent the testator contemplated the benefit of such parent’s children, in the absence of a contrary purpose being expressed, and the common law was modified to this extent in the case of gifts to the descendants of the testator or to his brothers and sisters. In other words, where the testator was providing for his immediate family — his brothers and sisters or his descendants — the Legislature presumed, in the absence of other provision, that the testator intended the gift to remain in the family of the brother or sister or his own descendants, and to this extent only is the common law limited.’ (Matter of Neydorff, 193 App. Div. 531, 533, supra.)”
When one thinks of a “renunciation” or “disclaimer” it conjures up thoughts of a person having been left a specific legacy which the beneficiary is now giving up by refusing to accept it. If the legacy is in the form of a right to purchase or continue a business, the same concept would apply, i.e., the beneficiary is giving up this right or option by refusing to accept it even though it is not a tangible asset.
Prior to June 1, 1965 there was no statutory provision permitting renunciation and it was not until November 5, 1971 that a statute codifying the prior decisional law governing the renunciation of a testamentary disposition was enacted.
In Matter of Fienga (75 Misc 2d 233, 233-234), Surrogate Sobel gives a brief history of the common law and the reasons for passing a renunciation statute, which bears repeating here: “Until recently no statutes governed renunciations of either testamentary dispositions or intestate shares. However, prior to any statute, a legatee or devisee could always renounce his testamentary disposition. A distributee could not. The theory was that a testamentary disposition was regarded as an ‘offer’ by the testator which the legatee or devisee could accept or *478 reject. A distributive share in intestacy on the other hand vested by force of law in the distributee at date of death. An attempt by the distributee to relieve himself of his vested share or to shift it to others occasioned possible gift tax consequences: and, the vested share remained subject to the claims of the renouncing distributee’s creditors. (Matter of Ramsdill, 190 N. Y. 492; Albany Hosp. v. Albany Guardian Soc., 214 N. Y. 435; Matter of Aievoli, 272 App. Div. 544; Matter of Wolfe, 89 App. Div. 349, affd. 179 N. Y. 599.) In contrast, because a testamentary disposition was an ‘offer’ which the legatee or devisee could accept or reject, a renunciation of a testamentary disposition had no gift or creditor consequences (Oliver v. Wells, 254 N. Y. 451). A statute was therefore necessary to permit a distributee to renounce in order to overcome the vesting hurdle.” Certain subsequent amendments to EPTL 2-1.11 were enacted to insure that the formal requirements were in keeping with Internal Revenue Code (26 USC) § 2518, since tax considerations were such an important factor in making a decision to disclaim an interest in assets.
Matter of Heffner (132 Misc 2d 361, 362-363) states the following:
“The statutory provisions governing renunciations, however, are not exclusive and do not abridge the right of any beneficiary or other person to renounce any property or interest therein arising under any other section of the EPTL or other statute or under common law (EPTL 2-1.11 [h]).
“No set procedure existed at common law for the acceptance or rejection of a legacy. One condition imposed was that a beneficiary could not enjoy the bounty of a legacy and disavow its burdens (Oliver v Wells, 254 NY 451) so that once having accepted the benefits he could no longer renounce the gift (Matter of Wilson, 298 NY 398). Another requirement was that a renunciation must be made within a time that is equitable in light of all the circumstances. This time might be long, if injury to others will not result from the delay, and by the same token, very short if failure to act promptly may work a hardship (Oliver v Wells, supra).”
In Matter of Von Ripper (95 Misc 2d 952, 957-958), it is also stated: “New York law permitted a legatee to renounce a legacy long before there was statutory provision therefor. Before the statute, renunciation could be a very informal matter requiring no special form; it could be written or oral or established by the legatee’s conduct. (Third Report of Temporary State Comm, on Modernization, Revision and Simplification of Law of Estates, March 31, 1964, pp 240, 254, 260.)”
*479 Clearly the renunciation executed by Norma Stetler on June 6, 1985 did not comply with the formal requirements of EPTL 2-1.11, but it would seem that she would have had the right to validly renounce her “bequest” providing she exercised this right in accordance with the criteria established by New York case law under subdivision (h) of EPTL 2-1.11.
If every renunciation, in order to be effective, was required to be filed in accordance with the time requirements and documentation provisions of EPTL 2-1.11, there would have been no purpose in including subdivision (h). The only purpose of this section would be to provide alternate methods of effecting a valid disclaimer providing there was compliance with the common-law rules of renunciation.
It would seem that the renunciation of an intangible bequest of a right or option could be one of those areas where the Legislature saw fit for some of the old rules under the common law to apply.
It is interesting to note that subdivision (j) of EPTL 2-1.11 makes another specific exception to the rigid filing provisions for determining whether a disclaimer is valid under the New York Tax Law.
It seems particularly appropriate in this case to consider the conduct of the person having a right or option as evidence of their intention to revoke at an early time so that it would not work a hardship on the residuary beneficiary or the party or parties having a possible interest in the assets involved.
The court could consider the failure of Norma Stetler to take timely action to exercise her right to continue the business or to purchase the assets as a renunciation of her “bequest” under the common-law rules, particularly in light of the fact that she continued to take an active role in the business as an employee for some nine years without asserting her rights.
However, in addition to her conduct as possibly constituting a renunciation under the common law, Norma Stetler did, in fact, execute a written form of renunciation on June 6, 1985, and although it was not timely under EPTL 2-1.11 nor were the additional documents required thereunder prepared at that time, it could still be a valid renunciation under the common-law rules even though it was not acceptable for filing in Surrogate’s Court.
The refusal of Surrogate’s Court to accept for filing a written renunciation where it fails to comply with the provisions of EPTL 2-1.11 seems justified on the rationale that to do so *480 would give credibility to such a document and imply that the court had given it approval as to its validity under the common-law rules even though it did not comply with the EPTL 2-1.11 rules.
If a person delays in renouncing by failing to comply with the requirements of EPTL 2-1.11, then he or she should be put to the test of proving validity under the common-law rules when and if it is called into question as it has been in this case.
The court can only surmise that the . execution of the renunciation was either an attempt to formalize the renunciation of her interest which had already taken place by her actions or inactions and confirming the vesting of the interest in Carol Cecala, or was an attempt by Norma Stetler to convey her interest to her issue under EPTL 3-3.3. However, if it had been her intention to pass her interest to her children, she should have complied with the requirement of giving notice to “all persons whose interest may be created or increased by reason of such renunciation.” (EPTL 2-1.11 [b] [2].) With only a bare renunciation form, the court has no inkling as to what her true intention might have been.
It is the court’s opinion that Norma Stetler did, in fact, validly renounce her interest under paragraph Fourth by her failure to exercise her rights within a reasonable time after the probate of the will and that the written execution was a confirmation of that renunciation.
If the renunciation was valid, then the court must determine whether EPTL 3-3.3 applies and Norma Stetler’s interest passed to her issue or if it does not apply and the interest passes to the residuary beneficiary under the will.
The key provision in this regard is the first phrase of EPTL 3-3.3 (a), “[u]nless the will whenever executed provides otherwise”.
Although a construction of paragraph Fourth is not technically before the court, a decision on the motion to dismiss cannot be rendered without the court determining the meaning and effect of the language used in granting this “bequest”.
In Matter of Agrella (175 Misc 456, 456-457, supra), Surrogate Dodd states:
“[1] It is elementary that in any question of testamentary interpretation the object of the court is to seek to place himself in the testator’s place and to endeavor to determine what he had in mind, and so far as legally permissible to effectuate it * * *
*481 “[2] It has been the uniform determination that section 29 of the Decedent Estate Law creates merely an inference or ‘presumption’ of intention on the part of a testator to benefit the descendants of a donee bearing one of the specified close relationships to him in the event of his predecease and that it is inapplicable in those instances in which the testamentary document, when read in the light of the circumstances surrounding the testator at the time of its execution, gives evidence of a contrary wish. (Pimel v. Betjemann, 183 N. Y. 194, 201; Matter of Neydorff, 193 App. Div. 531, 533; Matter of Depeirris, 110 [App. Div.] 421, 423; Matter of Northrip, 168 Misc. 542, 544.)”
It is obvious from a reading of the will that the primary object of Roger C. Stephens’ bounty was his surviving spouse, Carol Cecala, with the exception of some property and business interests which were left to persons who had an ongoing and personal interest in those matters. Such was the case with the “bequest” to his sister under paragraph Fourth.
By prefacing this bequest with the language, “I give and bequeath to my sister, norma stetler, who has managed said business for me for a number of years”, there is an implied intent that he wanted to bestow this bequest to benefit her alone and not her issue who had nothing to do with the business. Considering the entire wording of paragraph Fourth taken as a whole, it is the court’s opinion that if Norma Stetler failed to exercise her rights or renounced or disclaimed the “bequest”, that nothing would pass to her issue but such interest would pass to Carol Cecala under the residuary clause (see, In re Conay’s Estate, 121 NYS2d 487).
Therefore, it is the decision of the court for all the reasons stated above that the motion to dismiss the petition to compel an accounting is granted in that the estate of Norma Stetler, John Scott Stetler, and Terry Woldridge have no standing before the court.
The court does not deem it necessary to rule on the question of laches.