## Green, et al. v. Jones, et al.

(Decided March 14, 1916.)

### Appeal from Franklin Circuit Court.

1. Taxation—Levy and Collection of Taxes—Notice.—While the power to levy and collect taxes is an incident to sovereignty, yet to authorize by statute the sale of the real estate of a citizen for taxes on the land, due by the former owner, without notice to the real owner, is beyond the power of the legislature.

2. Taxation—Lien and Priority—Notice.—The lien of the State is not lost by the conveyance to another by the former owner; but if a sale is attempted to enforce the lien, the purchaser is entitled to notice.

3. Husband and Wife—Husband Cannot Convert Adverse Holding.— A husband while living with his wife upon her land and in charge thereof, cannot by any acts of his convert his holding to one adverse to her title.

4. Husband and Wife—Adverse Holding.—The wife in such case, being only a life tenant, her holding cannot be adverse to the remainderman, and as the husband cannot hold adverse to the wife, neither could his holding be adverse to the remainderman.

HAZELRIGG & HAZELRIGG for appellants.

W. C. MARSHALL for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

It is sought by this suit, filed in the Franklin Circuit Court by some of the collateral heirs and next of kin of Belinda D. Jones (nee Green), to sell for the purposes of division two tracts of land situated in Franklin county, one consisting of 185 acres and the other of 33 acres. The latter tract is a part of a tract containing 70 acres known as the Harriett Marrs tract. The parties claim title to the land through the will of Nicholas P. Green, who was the father of Belinda D. Jones, and who died in the early part of the year 1880, testate and domiciled in Franklin county, and whose will was probated in the county court of that county on March 30, 1880. The testator devised to his various children specific tracts of land, the one to his daughter Belinda Jones being the 185 acres sought to be sold in this proceeding. By a residuary clause in his will he directed that any land which he might own at his death not covered by specific devises should be divided between his children so as to make them as nearly equal as possible. Under

this clause there was set apart to Mrs. Jones 33 acres of the 70 acres Harriett Marrs tract, it having been purchased by the testator after executing his will and of course passing under the residuary clause therein. By his will Nicholas P. Green limited the estate of Mrs. Jones to the land devised to her, including that covered by the residuary clause, to her natural life, and after her death to her children or their descendants, if any, and if none, then to his other children and their descendants. Mrs. Jones died in 1910 without having ever borne any children, whereupon her collateral heirs and next of kin under the will of Nicholas P. Green became the owners of the two tracts of land in controversy. This suit was filed by some of them against the others and during the progress of the cause, the husband of Mrs. Jones, Colon M. Jones, was made a party to the suit and he filed his answer claiming to be the owner of the 33 acres, being a part of the Harriett Marrs tract. The title which he asserts to this tract is based upon the following claims: The taxes due the state for the year 1877 on the 70 acre tract amounted to $8.43, and it not having been paid, the sheriff sold the entire 70 acres on November 6, 1880, at which sale one W. L. Jett, who was an Auditor's agent, became the purchaser thereof and he transferred his bid, which he made for and on behalf of the State, to W. Lee Crutcher, and Crutcher transferred it to Martha Thomas and C. M. Jones on January 1, 1883. On March 22, 1883, the then Auditor of the State, Fayette Hewitt, executed a deed for and on behalf of the State to C. M. Jones for the 33 acres involved here and to Martha Thomas for the remainder of the 70-acre tract.

Before the sale of this land for the taxes Nicholas P. Green had purchased and become the owner of it, and without notice of the unpaid taxes. He died before the sale and at that time the land was owned by his devisees. The sale through and by which the Auditor executed the deed hereinbefore mentioned, as well as the execution of such deed were each made under the provisions of an act of the General Assembly approved May 6, 1880.

In the case of Quinlan v. Callahan, 81 Ky., 618, this court in passing upon the validity of a deed executed by an Auditor's agent, conveying land sold for taxes under circumstances quite similar and almost identical with

the ones here, determined that the purchaser of the land subsequent to the accrual of the taxes and who was the owner at the time of the sale for the taxes, was entitled to notice of the fact of the unpaid taxes by his predecessors in title, and of the lien to secure their payment. It was furthermore held therein that a sale under such circumstances without such notice was void and conveyed to the purchaser no title. The language employed by the court is:

"The second section of the act entitled 'An Act to amend the revenue laws of the State,' approved May 6, 1880, should not be so construed as dispensing with the necessity of notice to one who has purchased the land after the lien for the taxes accrued, when the time for the collection of the taxes in the ordinary mode has expired, and a sale without notice or demand in such cases is, as to the innocent purchaser, void. The right to collect taxes on the part of the State is not lost by the delay or neglect of the officer to collect it in the usual mode, and the transmutation of titles being so common with reference to real estate, and such liens not being susceptible of discovery in the examination of titles, there is no reason or necessity for depriving the citizen of his property without citation or notice, and such an attempt must be held as in violation of his constitutional rights. While the power to levy and collect taxes is an incident to sovereignty, it is also the object of a government like ours to protect the private property of the citizens, and to authorize by statute his property to be sold for the failure on the part of his neighbor to discharge a duty owing the State is an exercise of arbitrary power, and takes from him the right to the protection of private property guaranteed him by the constitution. The answer, therefore, that his property was sold for back taxes assessed against another, without notice or demand, was sufficient to defeat the recovery. No title passed to the purchaser under such a state of case."

The deed executed by the Auditor's agent to appellee contains this clause: "It is expressly understood and provided that the names of the present owners were not included in the advertisement under which this sale was made." And also the further one: "N. P. Green's heirs, being present owners," which two clauses established the fact that the then owners of the land were not given the notice which this court adjudged to be necessary in the Quinlan case, *supra*, in order to render the

proceedings, as well as the deed executed thereunder, valid. We have found no case holding to the contrary of the rule laid down in that case, and we therefore hold that appellee Jones acquired no title by the execution of the Auditor's deed, even if there were no other facts to have prevented him.

The second contention of the appellee is that from the date of the transfer of the bid to him in 1882, he has been in the adverse possession of the 33 acres and is therefore entitled to hold it. This is untenable for two reasons. The first being that his wife had a life estate therein and his holding could not have been adverse to her title; Gambrell v. Gambrell, 167 Ky., 734; Meraman's Heirs v. Coldwell's Heirs, 8 B. Monroe, 32; 22 Cyc., 1208. Whatever may have been his acts accompanying his holding he could not convert it from an amicable to a hostile one as against his wife, nor could she by verbal disclaimer, as it is insisted she did, change the character of his holding. His holding was her holding, no more and no less. As seen she was but a life tenant, and being so her holding could not become adverse to the title in remainder so as to ripen her life estate into a fee simple title as against the remaindermen. Carpenter v. Moorelock, 151 Ky., 506; Ison v. Cornett, 141 Ky., 771; Holmes v. Lane, 136 Ky., 21; May v. Scott, 12 Ky. L. Rep., 248; Woolfork v. Richardson, 10 Ky. L. Rep., 690; Edwards v. Woolfork's Admr., 17 B. Monroe, 376; McIlvain v. Porter, &c., 9 Ky. L. R., 99; Simmons v. McCay, 5 Bush, 25; Williams' Admr. v. McClanahan, 3 Met., 422; Davenport v. Prewett's Admr., 9 B. Monroe, 94.

The same authorities also hold that the right of the remaindermen to proceed for a recovery of the land does not accrue until the death of the life tenant, which, as we have seen in this case, was in 1910.

The appellee having failed to show title through his tax deed, or by adverse possession, it results that he failed to establish his claim to ownership of the 33 acres involved. The court below adjudged the sale of the tract containing 185 acres, but declined to order a sale of the 33 acres, but adjudged the appellee to be the owner of it. This, as we have found, was erroneous.

The judgment is therefore reversed, with directions to order the sale of the 33 acres as prayed for, and for other necessary orders consistent with this opinion.