## Miller et al. v. Trigg County Farmers Bank et al.

February 24, 1950.

Ira D. Smith, Judge.

W. H. Southall and S. Y. Trimble, IV for appellants.

John T. King for appellees.

STANLEY, COMMISSIONER—Affirming.

Walter Miller devised his wife a life estate in two tracts of land, one containing 246.94 and the other 71⅜ acres, "to hold and use as she pleases." Subject to that life estate, in the fifth clause of his will, he devised his daughter, Lula Clark, "160 acres out of the 247 acres above mentioned to be surveyed to her" as described, so as to include the dwelling house and curtilage. The clause continues, "There will be approximately 87 acres left in said tract of 247 acres. I give my said daughter the privilege of buying the said 87 acres if she wants it by paying $1500.00 in cash for it, my executor to make deed to her and the proceeds to go to the other heirs of my estate as their interest may appear legally."

This is the provision particularly involved in the case.

In the sixth paragraph testator directed, "Subject to my wife's life estate or after her death" that the 71⅜ acres be sold and the proceeds divided "among all my heirs as their interest may be legally."

In the seventh paragraph he directed that all of his other land be sold as soon as possible after his death, in the discretion of his executor, and the proceeds equally divided among four sons, John, Jesse, Garnett, and Amos, "or their legal heirs, share and share alike according to law."

In the eighth paragraph testator gave outright $5,000 to his wife, $500 to his daughter, and $500 to the children of his son Hugh, and provided that the rest of his securities should be divided equally among the same four sons. He recited that he had already given his son Hugh "quite a large sum of money and have helped his widow and children is my reason for not giving them any more of my present estate."

The eleventh clause reads: "The land that I devise to my daughter Lula Clark I give to her during her life

time, to own and use as she pleases, and at her death to be the property of her children, or legal heirs."

It will thus be seen that the testator devised his daughter only a life estate in 160 acres of land and an option or right to acquire 87 acres (the rest of the home place), by paying $1,500 to the other heirs. No question is raised as to the chancellor's construction that this provision was included in the limitation of a life estate to the daughter. And it was all subject to her mother's life estate. The will authorizes the executor to "fully settle my estate, including the selling and conveying any land not otherwise disposed of previously hereto."

The testator died in September, 1933. His daughter, Lula M. Clark, died in January, 1943, four years before her mother, who died in January, 1947.

The present suit, filed in November, 1947, by the executor of Miller's will and the children of his daughter, Mrs. Clark, against the other devisees, seeks to have it adjudged that Mrs. Clark's children may exercise the option given to their mother to buy the 87 acres by paying $1,500 for it and to have the executor convey the land to Mrs. Clark's children. The petition states that Mrs. Clark had elected, during her lifetime, to exercise the option, but her mother, who was the executrix, had declined to make the conveyance under a claim that the property belonged to her during her lifetime.

It was proved that the mother had on several occasions related to friends that the daughter wanted her to make her a deed, but she did not do so because that was not her husband's will or wish. Mr. John L. Street, president of the Trigg County Farmers Bank, which qualified as executor after the widow's death, testified that Mrs. Clark and her husband had discussed the matter of the option with him before Mrs. Miller's death and were anxious to know whether or not she must exercise the privilege of acquiring the 87 acres before the death of her mother. There is other testimony that Mrs. Clark frequently insisted with her mother upon closing the transaction, but she always refused.

The defendants proved that the tract is now worth $7,500 or $8,000 which is two or three times its value in 1933, when the testator died.

The court adjudged that Mrs. Clark's children were

entitled to the tract of land by paying $1,500 to the executor to be distributed among the other distributees and their heirs.

Our inquiry is whether the option lapsed by the death of the daughter before the mother so that the daughter's children, as remaindermen, may not exercise and enforce the election to take the land. If they cannot, then it must be held that a contingency or condition arose for which the testator did not provide.

The presumptions of equality and complete testacy have a bearing upon the question whether or not the children of the daughter acquired, by specific devise or by devolution, the right to take the 87 acres after the death of the testator's widow, the first life tenant.

The amount of the personal estate is not shown, but the daughter was given only $500 of it. If she and her children together were given only a second life estate and the remainder in only 160 acres, there would be inequality or partial intestacy. They were excluded from sharing in the proceeds of "all other lands." If the 87 acres, which had been particularly and specifically referred to in the will, be not included in the term "all other lands," then it became undevised estate. We may not regard the testimony of the scrivener of the will a layman, that the testator was trying to make his children equal but wanted his daughter to have the home place on her mother's death and felt that his bequest of 160 acres and the right to purchase the balance of 87 acres would equalize her. The evidence was incompetent, for in construing a will the court is confined to the instrument itself, there being no latent ambiguity as to any fact. Jennings v. Jennings, 299 Ky. 779, 187 S. W. 2d 459. But the lengthy will, when taken by the four corners, evidences a purpose of equality, albeit the daughter's share was to her and her children. To have equality it is, therefore, necessary to regard the daughter and her children as a unit.

Doubtless, the testator, like most parents, supposed his daughter would survive her mother and would in fact accept the 87 acres. It is quite certain that he intended that his widow should not be disturbed in her possession and use of this or any other part of the home place. The daughter's entire devise was a life estate in succession of the widow. She could not enter upon its enjoyment

until after the death of her mother. She could have acquired no present right or interest in the 87 acres except the naked title for herself and children. It is a reasonable inference, therefore, that the testator had in mind that the right to acquire the tract would be suspended until his widow's death. The daughter did in fact elect to exercise the option. But her mother, who was both executrix and life tenant, refused to accept the same on the idea that the option could not be exercised or executed until after her death.

In Campbell v. Dunkelberger, 172 Iowa 385, 153 N. W. 56, 57, the will provided in part for a life estate in land to the testator's widow and for the remainder to go to his two sons jointly in fee, provided they should pay the estate $65 per acre. The court did not accept the argument that this meant the sons should exercise the right of election at the time of the testator's death; that the word "remainder" should be given its technical meaning and that the option to purchase was subject to the condition precedent and could not be exercised until after the death of the widow. In the present Miller will the children of the daughter are remaindermen. We think the proper construction of the instrument is that the right given the daughter and her family was not lost because she did not file a suit and compel her mother to accept the money and convey the land to her and her children. If the right of a remainderman to proceed for the recovery of land does not accrue until the death of the life tenant, Green v. Jones, 169 Ky. 146, 183 S. W. 488, a fortiori, should the testamentary right to elect to take property be suspended to the same time.

We, of course, agree with the appellant that if no time is specified in either a testamentary or contract option, the right must be exercised within a reasonable time. But under this view, the time was upon the death of the first life tenant, and the remaindermen acted promptly. The same view also disposes of the point that an option to purchase real estate is regarded as personal to the one to whom it is given and cannot be transferred to another person.

We are of the opinion, therefore, that the judgment is proper, and it is affirmed.