MARVIN TUECKE and BETTY LAGE, appellees, v. LOUISE TUECKE and VIOLA BOLK, appellants.

No. 51521.

(Reported in 131 N.W.2d 794)

DECEMBER 15, 1964.

Breese, Cornwell, Winston & Reuber, of Mason City, for appellants.

Hobson & Cady, of Hampton, for appellees.

THOMPSON, J.—This appeal raises two difficult questions arising under the provisions of section 633.16, Code of 1962, and previous Codes, commonly known as the antilapse statute. We quote it herewith: "If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will a contrary intent is manifest."

The plaintiffs are the children and heirs of Alfred Tuecke, who was a son and a named devisee in the will of John W. Tuecke. The defendants are daughters, and also devisees in the will, of John W. Tuecke, who died testate on January 13, 1951. His will left a life estate in all of his property to his wife, Minnie Tuecke, who survived him and died on January 28, 1963. The provision in the will of John W. Tuecke which brings about the present controversy is this:

"ITEM Three—Subject to the life estate created in Item two I herewith devise and bequeath a one-third (1/3rd) interest in my entire estate to each of my three (3) children, Alfred Tuecke, Viola Tuecke Dittberner and Louise Tuecke and to their heirs.

"I further provide that my son, Alfred Tuecke, have the option and right to purchase the two-thirds (2/3rds) interest in my farm in Ross Township, such two-thirds (2/3rds) being the share not already devised to him, for the sum of ten thousand dollars ($10,000.00) and such right or option is herewith devised and bequeathed to him."

The plaintiffs contend they are entitled to exercise the right given to Alfred Tuecke by this item of the will. Alfred Tuecke died on the same date as his father, January 13, 1951, but a few hours earlier. The trial court held that the option passed under the antilapse statute to the plaintiffs, and from that judgment we have this appeal.

I. The defendants state two propositions relied upon for reversal, and while other questions appear to have been raised in the trial court, we are concerned only with the two stated and argued here. The first is this: "The option to purchase property

granted to Alfred Tuecke under John W. Tuecke's last will and testament was a personal right which expired with the death of Alfred Tuecke and did not pass to Alfred Tuecke's heirs under the antilapse statute, section 633.16."

As the proposition stated shows, the defendants strongly contend that the option granted to Alfred Tuecke was no more than a personal right and was not "property devised to him" within the meaning of section 633.16. The plaintiffs, as heirs of Alfred, seek to exercise the option. The trial court was of the opinion that it was a valuable property right and upon the trial so found as a fact. It was pointed out by the court that the defendants contended, correctly, that their two-thirds interest in the 220-acre tract of farmland was, both at the time of making the will and at the time of the trial, worth considerably more than the $10,000 option price, and the testator must have known that fact when he executed his will. As the court said: "He gave his son an option which is more than a mere right; it is an asset of very substantial economic value."

The defendants urge, however, that the general rule is that an option to purchase is personal and does not descend to heirs. They cite several cases. Perhaps their strongest reliance is upon In re Ludwick's Estate, 269 Pa. 365, 112 A. 543. Briefly, this case deals with a provision in a will which gave the testator's son the right to take certain lands at their appraised value. The son was mortally ill at the time of the death of the testator, and died within a short time afterward, never having had competency to make an election to take or not to take. It is at once apparent that no antilapse statute was involved. The Pennsylvania Supreme Court held the right to elect did not pass to William's heirs; but it said: "Of course, the rule is different in those cases where, by statute, an estate or power given to one devolves, in case of his death, upon others designated in the act." Loc. cit. 269 Pa. 370, 112 A. 544.

Bradley Development Corp. v. First National Bank in Palm Beach, Fla. App., 121 So.2d 670, 672, holds no more than is found in this quoted language: "It is not necessary to decide whether or not such preferential privilege is assignable or inheritable." Lucas v. Scott, 9 Cir., 239 F. 450, and Valley Bank

& Trust Co. v. Williams, 46 Ariz. 20, 46 P.2d 645, are both cases in which the one granted the right to purchase survived the testator. No antilapse statute was involved or discussed in either. They shed no light on the problem before us.

Mohn v. Mohn, 148 Iowa 288, 126 N.W. 1127, cited and relied upon by the defendants, did not involve the antilapse statute. There the option holder died sometime after the testator without exercising his option. The opinion contains this language: "Of course a pure option under our holdings does not pass to the optionee's representatives or successors. * * * To this general rule there are, however, some exceptions under our statute which need not be noted at this time." Loc. cit. 148 Iowa 301, 126 N.W. 1132. It is again apparent that the statement is dictum so far as its applicability to the antilapse statute is concerned.

In Myers v. Stone & Son, 128 Iowa 10, 12, 102 N.W. 507, 111 Am. St. Rep. 180, 5 Ann. Cas. 912, the question was as to the effect of an option to purchase agreement included in a lease of realty. Again section 633.16 was not involved; and, in addition, the option was there limited to "the said second party, but no other person". So, in Conn v. Tonner, 86 Iowa 577, 53 N.W. 320, the question concerned the effect of an option to purchase contained in a lease; and it was held that it was not an interest in the land, so that a judgment against the optionee was not a lien upon the realty.

It may be conceded that an option to purchase is not an interest in the real estate until exercised; but the question before us here is whether it is "property" within the meaning of the antilapse statute. We have pointed out above that the defendants themselves make it clear the option has substantial value; and indeed, if it did not have, if their interest in the land was not worth more than the option price of $10,000 it is not likely this lawsuit would be before us.

Volume 91 C. J. S., Vendor and Purchaser, section 4, page 838, states this rule: "An option is property, or a property right, or vests in the legal holder thereof a property right which the courts will protect." The cases cited in support of the rule are concerned with an option granted in a lease, and deal somewhat with the question of consideration. But since consideration

is not necessary to support a testamentary devise or bequest; they are in point as holding that an option may be, and is, when its value is apparent, property.

The Iowa case which comes closest to the question is Mason v. Mason, 194 Iowa 504, 505, 188 N.W. 685. There the testatrix in her will gave her son James Mason $2000 "provided, however, at his election. I give and bequeath to him in lieu of such sum if he so elects [certain described real estate]. I hereby give my said son the right to take either said bequest of two thousand dollars ($2,000) or the devise of said real estate as he may so elect. Such election to be made by him within six (6) months of the probate of my will."

The son James Mason predeceased the testatrix. The residuary heirs of the testatrix brought their action to construe the will and to confirm their title to the described real estate which James Mason was given the option to take instead of the $2000. The heirs of James Mason defended, asserting their right to exercise the option, and that they had done so. The trial court found the issues with the plaintiffs, and we reversed. We said:

"Contrary to the view entertained by the appellee and by the trial court, we are led to the conclusion that the gift to the son is something more than a simple money legacy, coupled with a personal privilege to take the land in lieu thereof. Among the reasons for such holding, we may mention the following: (1) To hold as the trial court did would require us to construe the privilege or right given James to choose between the money and the land as if the testatrix had qualified it by adding thereto the words, 'if he survive me.' This, we think, we are not authorized to do. We may construe a will, but we cannot properly assume to make one for the testatrix, or to insert therein conditions not fairly expressed by herself. (2) It is not, as counsel argue, a devise or bequest 'upon condition,' either precedent or subsequent. It is the gift or devise of a valuable right, by which he may, at anytime within six months after his mother's death, acquire from her estate either the sum of money or title to the described land." Loc. cit. 194 Iowa 507, 188 N.W. 686, 687.

This answers the contention that the devise of the right to purchase the two-thirds interest of the defendants, given by the

will of John W. Tuecke, is merely a condition subsequent. It also disposes of the claim that the courts are reluctant to so construe a will as to interfere with vested rights. In the case at bar the testator clearly gave to Alfred the right to purchase the vested interests of the defendants. So, if the antilapse statute applies, his heirs were given the same right.

■ We said in Mason v. Mason, supra: "That the property right and interest inherited by the heirs of the deceased devisee are the same which the devisee himself would have been entitled to take under the will, had he survived the testator, is not only assured by the statute itself, but such has been the repeated holding of the court." Loc. cit. 194 Iowa 511, 188 N.W. 688. We then cited McAllister v. McAllister, 183 Iowa 245, 248, 167 N.W. 78, 81.

We are unable to see any valid distinction between a devise which gives the devisee the right to elect between a money gift or real estate, as in the Mason case; and one which gives the right to elect to pay a stipulated sum for the realty. Each is a valuable property right, and each devise is equally within the terms and meaning of the antilapse statute.

The substantial question is, of course, what is the meaning of the words used by the testator? It is apparent that he wanted Alfred to have the right to purchase the farmland at a fixed price. But it is thought that he would not have wanted Alfred's heirs to have that same right. It is sufficient answer to point out that if Alfred had survived and had exercised the option, it would, in all probability, have eventually inured to the benefit of his heirs; and the testator must have been aware of this when he made his will. Application of the antilapse statute here gives Alfred's heirs the same rights directly which they would in the course of time have received indirectly if he had lived.

■■ The testator is presumed to have known of the statute. Nicholson v. Fritz, 252 Iowa 892, 897, 898, 109 N.W.2d 226, 229; Benz v. Paulson, 246 Iowa 1005, 1013, 70 N.W.2d 570, 574; In re Estate of Finch, 239 Iowa 1069, 1084, 32 N.W.2d 819, 826, 3 A. L. R.2d 1403. We hold that the option to purchase was a valuable property right which was inherited by Alfred Tuecke's heirs under the provisions of section 633.16. Again quoting from

Mason v. Mason: "Such right is property and as property, susceptible of private ownership, whether acquired by purchase, gift, or will, it is a heritable interest which, upon death of the owner, passes in the line of succession prescribed for it by the law." Loc. cit. 194 Iowa 508, 188 N.W. 687.

■ II. The defendants' second and final assigned error is that the will itself manifests a contrary intent; that is, it shows the testator did not intend that Alfred's heirs should inherit the right to purchase. This turns upon the fact that paragraph one of Item Three of the will devises a one-third interest in the estate to the three children of John W. Tuecke—Alfred and the two defendants here—and after naming them concludes "and to their heirs"; while paragraph two of the same Item of the will, which gives Alfred the right to purchase the interest of his sisters for $10,000 ends "and such right or option is herewith devised and bequeathed to him." The defendants think it highly significant that the words "and to their heirs" are included in the devise of the realty itself and are omitted in the devise of the purchase right to Alfred.

■ ■ Certain rules governing the application of the antilapse statute have been firmly established by our decisions. Nicholson v. Fritz, supra, contains a cogent statement of the rules which are to be followed. These may be stated thus: The contrary intent must appear from the terms of the will; Nicholson v. Fritz, supra, loc. cit. 252 Iowa 894, 109 N.W.2d 227, and citations. The burden of proof of showing that the statute does not govern is upon the party so contending; and a contrary intent must be clearly shown; any doubts are resolved in favor of the operation of the statute, and the statute is to be broadly and liberally construed. Nicholson v. Fritz, supra, loc. cits. 252 Iowa 894, 897, 109 N.W.2d 227, 229, and cases cited.

These authorities seem to be decisive of the question before us. The difference between the devise of the realty itself which included the words "and to their heirs" and the omission of the words of heirship in the devise of the right to purchase does not sufficiently manifest a contrary intent to prevent the operation of the antilapse statute. The use of the words "and their heirs" in conveyances and devises of realty, while no longer needed in

Iowa under section 557.2, is still quite common. The testator was first devising an interest in real estate; second, he was devising a right which did not create an interest in the land itself, although as we have held above it was a valuable property right. We do not find the language of the will sufficient to show an intent that the heirs of Alfred Tuecke would not inherit the right to purchase, when construed in the light of the rules set forth above in this division.

The judgment of the trial court was right.—Affirmed.

All JUSTICES concur.