[No. 1874-1. Division One. April 8, 1974.]

In the Matter of the Estate of CORA W. ALLMOND, *Deceased.* ROBERT EDWIN ROWLAND et al., *Appellants,* v. THE ESTATE OF HELEN WANAMAKER, *Respondent.*

*Aiken, St. Louis & Siljeg, Gerald L. Bopp, Binns, Petrich, Mason, Hester & Robson,* and *John A. Petrich,* for appellants.

*Riddell, Williams, Voorhees, Ivie & Bullitt, Stimson Bullitt, Driftmier & Driftmier,* and *Ben Driftmier, Jr.,* for respondent.

JAMES, J.—The residuary clause of Cora W. Allmond's will is as follows:

All the rest, residue and remainder of my estate of whatsoever kind and character and wheresoever situated or located, I give, devise and bequeath in the following manner, to-wit:

(a) To Helen Wanamaker (niece of my deceased husband) one-eighth of said residue.

(b) To my brother, EDGAR J. ROWLAND, one-half of said residue.

(c) To my niece, MARY ROWLAND MANLEY, one-eighth of said residue.

(d) To my sister-in-law, MAMIE ROWLAND, and to her son, IVER ROWLAND, share and share alike, or to the survivor of them if either of them be deceased, two-eighths of said residue.

This appeal challenges the trial judge's construction of subparagraph (d).

Mamie Rowland was the widow of Cora's deceased brother, Edwin. Iver Rowland predeceased his mother, Mamie, and both predeceased the testatrix. Appellants, Robert Rowland and Joan Burkhardt, are the living children of Iver Rowland. They contend that by operation of the so-called "anti-lapse" statute, RCW 11.12.110,[1] they should receive the two-eighths of the residue which their father would have received had he survived both his mother and the testatrix.

Appellant Rush and respondent Wanamaker both contend that the anti-lapse statute does not apply. Rush asserts that the lapsed share should pass by intestacy, and Wanamaker contends that the lapsed bequest returns to the residue to be taken pro rata by the surviving residuary beneficiaries. All parties agree that Iver Rowland, a nephew, is a "relative" of Cora Allmond in the contemplation of RCW 11.12.110, but that his mother, Mamie Rowland, is not. *Ruchert v. Boyd*, 56 Wn.2d 266, 352 P.2d 216 (1960); *In re Estate of Renton*, 10 Wash. 533, 39 P. 145 (1895).

The trial judge agreed with Wanamaker and concluded:
1. Upon Iver Rowland's death the share of Cora All-

---

[1] "When any estate shall be devised or bequeathed to any child, grandchild, or *other relative* of the testator, and such devisee or legatee shall die before the testator, having lineal descendants who survive the testator, such descendants shall take the estate, real and personal, as such devisee or legatee would have done in the case he had survived the testator; if such descendants are all in the same degree of kinship to the predeceased devisee or legatee they shall take equally, or, if of unequal degree, then those of more remote degree shall take by representation with respect to such predeceased devisee or legatee. A spouse is not a relative under the provisions of this section." (Italics ours.)

mond's estate bequeathed to him in paragraph 6(d) of Cora Allmond's Will lapsed and became part of the share of Mamie Rowland bequeathed to her in the same paragraph.

2. Upon the death of Mamie Rowland, the share of Cora Allmond's estate bequeathed to her in paragraph 6(d) of Cora Allmond's Will, including the previously lapsed share of Iver Rowland, lapsed and became part of the remainder of the residuary estate.

Conclusions of law Nos. 1 and 2.

We do not agree.

■ RCW 11.12.110 reflects a legislative determination that, as a matter of public policy, when a testator fails to provide for the possibility that a consanguineous beneficiary might predecease him, the "lineal descendants" of that beneficiary take his share. *In re Estate of Button*, 79 Wn.2d 849, 490 P.2d 731 (1971). This is said to be a recognition of a natural and instinctive concern for the welfare of those in a testator's bloodline.

> Upon a devise to a child, grandchild, or other relative by consanguinity, it would be naturally supposed that a testator would intend that his property, upon the death of the devisee before his own death, should inure to the benefit of the lineal descendants of his devisee, because such descendants would in fact be his relatives for whose welfare he might be supposed to have a concern of like character and only differing in degree from that which he would feel towards the devisee himself.

*In re Estate of Renton, supra* at 539.

The general rule is that when a devise would be affected by an anti-lapse statute, an intent on the part of the testator to preclude the operation of the statute must clearly be shown.

> Recognition of the effectiveness of a contrary testatorial intention to exclude the operation of a statute designed to prevent lapses is found in many decisions, but the position is frequently taken that such an intention must be clearly proved and all doubts resolved in favor of the operation of the statute, and that the presumption is in favor of the normal operation of the statute and

against any construction of the will having the effect of defeating the enactment.

(Footnotes omitted.) 57 Am. Jur. *Wills* § 1436 (1948); *Nicholson v. Fritz*, 252 Iowa 892, 109 N.W.2d 226 (1961).

■ Both Rush and Wanamaker contend that by conditioning the bequest to each beneficiary upon that beneficiary's survival of the other, Cora manifested her intention that the anti-lapse statute should not operate to preserve Iver's share for his children in the event he did not survive both Mamie and Cora. This contention is persuasive only if it be presumed, first, that Cora had foreseen the possibility that neither Iver nor Mamie would survive her and, second, that she would rather die intestate as to the bequest or that she preferred it to go into the bloodline of her brother, Edgar, rather than into the bloodline of her brother, Edwin.

We believe that neither presumption is warranted when Cora's will is considered in its entirety. Moreover, her pattern of disposition is fully consistent with the statutory purpose that a bequest to a consanguineous relative should stay in his, bloodline. After providing for a niece of her deceased husband, Cora divided the remainder of her estate among members of the families of her two brothers. The provision for survivorship between Mamie and Iver clearly indicates a desire that members of the family of her deceased brother, Edwin, receive one-fourth of the residuary estate. We believe it to be more rational to presume that Cora simply failed to anticipate that her nephew, Iver, might not survive her. If for some reason she wished to benefit Iver but *not* his children, it is more rational to assume that she would have clearly expressed such intention.

In view of this pattern of disposition, there appears no clearly expressed or implied intent that the anti-lapse statute not apply. Specifically, we find no contrary intent expressed by the use of the words "if either of them be deceased." On the contrary, it is reasonable that the plain words of the statute should apply and that appellants Row-

land and Burkhardt should "take the estate . . . as [Iver] would have done in the case he had survived the [testatrix]." RCW 11.12.110.

■ Neither Rush nor Wanamaker urge acceptance of the trial judge's conclusion that Iver's share "lapsed" upon *his* death, but Wanamaker argues that the words of survivorship in subparagraph (d) "directed the *expectancy* initially assigned to Iver to be *shifted* to Mamie who *received* this expectancy as a contingent beneficiary, contingent, as are all beneficiaries of wills, on surviving the testatrix." (Italics ours.) Wanamaker then reasons that because Iver's "expectancy" had been shifted to Mamie and because it "stayed shifted," the anti-lapse statute could aid only the lineal descendents of Mamie, had Mamie been a "relative" in the contemplation of the statute.

This reasoning fails to recognize the fundamental proposition that testamentary instruments are ambulatory in nature and confer no fixed rights, whether such rights be called a "share" or an "expectancy," until the death of the testator.

> As was said in the case of *Niccols v. Niccols,* 168 Cal. 444, 143 Pac. 712, in discussing the essential elements of an instrument testamentary in its nature, quoting from *Nichols v. Emery,* 109 Cal. 329, 41 Pac. 1089:
> "The essential characteristics of an instrument testamentary in its nature is that it operates only upon, and by reason of, the death of the maker. Up to that time it is ambulatory. By its execution the maker has parted with no rights, and has divested himself of no modicum of his estate; and, *per contra* no rights have accrued to and no estate has vested in, any other person. The death of the maker establishes for the first time the character of the instrument. It at once ceases to be ambulatory. It acquires a fixed status, and operates as a conveyance of title."

*Young v. O'Donnell,* 129 Wash. 219, 224, 224 P. 682 (1924).

It follows that nothing "shifted" to Mamie upon Iver's death in other than a hypothetical sense. Cora's death prior to Mamie's demise was required before Mamie's bequest

acquired a "fixed status." But since Mamie did not survive Cora, Iver's "posthumous" survival (by operation of RCW 11.12.110) entitles his children to receive the full two-eighths share devised in subparagraph (d).

In view of our holding, we do not reach the issue presented by the adversary claims of Rush and Wanamaker.

Reversed and remanded for proceedings not inconsistent with this opinion.

SWANSON, C.J., and CALLOW, J., concur.

Petition for rehearing denied June 19, 1974.

Review denied by Supreme Court July 30, 1974.