**In the ESTATE of Oscar NOWELL, Deceased.**

**Billy Joe NOWELL, Administrator of the Estate of Roy O. Nowell, Deceased, and C. Michael Fitzgerald, Guardian Ad Litem for the Estate of Jeanne Sue Farnsworth and Jimmy Roger Belew, Minors, Appellants,**

v.

**Elsie DAVIS and Veneta M. Woods, Co–Executrices of the Estate of Oscar Nowell, Deceased, Respondents.**

**No. WD 31235.**

Missouri Court of Appeals, Western District.

Oct. 1, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 3, 1980.

John A. Sanders, Clinton, for appellants.

Edgar S. Carroll, Warrensburg, for respondents.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

The administrator of the estate of Roy O. Nowell, deceased, appeals from an order of the circuit court denying the estate's application for enforcement of a real estate purchase option granted Roy by the will of his deceased father, Oscar Nowell. The issue is whether the testamentary provision affording Roy the opportunity to purchase a tract of real estate from his father's estate at a favorable price may be exercised for the benefit of Roy's estate.

Oscar Nowell died testate March 19, 1978, leaving as his legatees his son Roy, three daughters and one granddaughter, the child of a deceased son, Sherman. Oscar's will, admitted to probate March 29, 1978, included the following provision, the interpretation and application of which is the center of the present controversy:

"It is my will that my son, Roy O. Nowell, shall have the right to purchase my forty (40) acre tract of land known as my home place, which was in my name only for the total purchase price of Twelve Thousand Dollars ($12,000.00). In the event that he has not tendered the purchase price of Twelve Thousand ($12,000.00) to my executor within six (6) months after the date of the filing of the inventory in my estate, then and in that event my executor shall sell said real estate for the best price obtainable to any person or persons. The proceeds from the sale of said property derived from the sale to my son, Roy O. Nowell, or to any other person or persons, shall go into the residue of my estate and be distributed as therein set out."

The residuary clause of the will provided for distribution in equal shares to Oscar's children or to their issue, except as to a daughter, Elsie L. Davis, who had no children. In the event Elsie predeceased Oscar, her share was to lapse. Elsie, however, was among the surviving children.

The estate inventory was filed April 6, 1978, thus fixing October 6, 1978 as the last day for exercise of the purchase option given to Roy. Market value of the tract in question was set at $35,000.00 by the inventory and appraisement.[1]

Roy Nowell died intestate March 25, 1978, six days after the death of Oscar and before any proceedings had been initiated on Oscar's estate. The meager record here does not show if Roy had knowledge of the op-

tion before he died or, if so, what his capability or intention with respect to exercising the option may have been. The record is also barren of any facts demonstrating or explaining a predisposition by Oscar that Roy and his descendants be selected for continued family ownership of the "home place." The record shows only that Roy did not act on the option before he died.

No relevant action followed Roy's death until September 26, 1978, when application for letters of administration on Roy's estate was filed. Appellant, Roy's eldest son, was issued letters and, on the assumption that the option had survived Roy's death and could be exercised by his personal representative, appellant sought probate division authority to borrow $12,000.00 needed to make a tender by October 6. A loan was required because the estate had no assets other than Roy's interest as a legatee of Oscar's estate. The order to borrow was entered, funds were produced and tender of payment was made and refused, all on October 5, 1978.

Appellant thereafter filed in this, the Oscar Nowell estate, his "Petition for Specific Execution of Option To Purchase Land," the relief sought being an order compelling the co–executrices[2] to accept payment of the option purchase price and convey the land. The trial court found that the option lapsed when not exercised by Roy during his lifetime and, being a personal right limited by the language of the will to Roy alone, it did not survive his death. Enforcement of the option was denied and this appeal followed.

Appellant argues as the sole point advanced on this appeal that the Roy Nowell estate is entitled to the benefit of the favorable option by reason of § 473.317, RSMo 1978, a statute which appellant contends was overlooked by the court below although cited and argued. Subsection 2, the rele-

1. The difference between the option price and the appraised value does not necessarily indicate intent by the testator to prefer the optionee. The will was executed in 1969 and was not thereafter revised to acknowledge appreciation in land values during the succeeding years.

2. The will named Roy Nowell as executor, but upon his failure to qualify, Elsie L. Davis and Veneta M. Woods, daughters of Oscar, were designated. They were so appointed and are now serving as co–executrices.

vant portion of the statute, reads as follows:

"If any person dies owning an option to purchase real or personal property, and it is to the advantage of the estate and will not be prejudicial to creditors or to specific devisees that such option be exercised, the court may by order authorize the exercise of the option by the executor or administrator and the payment by the executor or administrator of the purchase price."

The gist of appellant's contention is that the above quoted section precludes expiration or termination of an option upon the death of the optionee and preserves the value of an advantageous option for the ultimate benefit of the optionee's heirs, devisees and legatees. Under appellant's interpretation, the statute mandates the survival of option rights after the death of the optionee and vests in the executor or the administrator of the optionee's estate a property right in the option irrespective of whether the language of the instrument creating the option so provides. Appellant cites no authority supporting this construction and application of the statute, but relies entirely upon the language of the statute itself to achieve the result urged.

■ The language employed by Oscar in his will cannot be construed as evidencing any intent that Roy's estate or heirs succeed to the option purchase right to acquire the "home place." This follows, first, because the testator referred only to his son as the person in contemplation as the optionee with language which bespeaks of limitation—" * * * my son, Roy O. Nowell, shall have the right to purchase * * * in the event he has not tendered the purchase price * * * proceeds from the sale to my son, Roy * * * " (emphasis supplied). Second, the testator anticipated the possibility that Roy would not exercise the option, albeit not upon the event which actually occurred, and provided that the property was to be sold on the open market to accomplish an equal distribution of the proceeds among Oscar's children. The will suggests no devise of the option right to

Roy's estate or heirs and, indeed, appellant makes no claim of entitlement on this ground.

■ While a testator could, by an appropriately drafted will, provide for succession to option rights after the death of the primary optionee, the use of words evidencing such intent is required. An option which does not specifically provide that it is binding on the heirs and assigns of the parties and thus indicate an intent that it survive beyond the lifetime of the parties is personal to them and expires on death. *In re Estate of Thomas A. Sifferman*, 603 S.W.2d 30 (Mo.App.1980). An option given by will to purchase estate property is personal to the optionee, it does not survive his death and may not be exercised by the optionee's successors in interest, by his heirs or by his personal representative. 28 A.L.R.2d 1167, Wills–Option–Who May Exercise; 80 Am. Jur.2d Wills § 1481 at 550; 96 C.J.S. Wills § 1104 at 834. Thus, apart from the statute cited by appellant, the option granted Roy by Oscar's will was a personal right to Roy which did not survive his death and did not pass to an alternate beneficiary because none was designated in the will.

■ An option to buy estate property partakes of the characteristics of options generally in that it is merely an offer to sell during a specified term. It is a unilateral undertaking which may be declined by the optionee without liability. It is personal property. *Hirlinger v. Hirlinger*, 267 S.W.2d 46 (Mo.App.1954). If the option by its terms survives for a specified period irrespective of the death of the optionee, it is subject to administration in the estate of the optionee just as any other personal property.

■ Legal title to the personal property of a decedent passes primarily to his executor or administrator from whom the heirs or legatees receive it through the process of administration. *Odom v. Langston*, 351 Mo. 609, 173 S.W.2d 826, 835 (1943). The administrator or executor of an estate which includes an option among the estate assets may therefore be obligated to

act and preserve the value of the option by exercising it if time limitations of the option are such that it would otherwise expire and become worthless before distribution to the heirs or legatees. Section 473.317(2), RSMo 1978 is simply a procedural statute which directs the court and the personal representative in acting to exercise an option. Of necessity the statute assumes that the option is upon terms which survive the death of the optionee and entitle the administrator or executor to act upon the option as an estate asset. In those circumstances, such as here, where the option expires on the death of the optionee, the statute has no application because no asset passes to the estate for administration.

■ The construction of § 473.317(2), RSMo 1978, advocated by appellant suggests that this section creates substantive property rights which would not exist absent the statute.[3] Apart from the question of whether the legislature could declare the enhancement of contractual and testamentary options to preserve the options for the benefit of the optionee's estate when the instruments creating the options have not so provided, the subject statute is not amenable to that interpretation. It does not purport to create substantive rights but deals only with administration on assets to which the estate has succeeded by the terms of the instrument which created the option.

The option in question here was personal to Roy, it expired when he died and his estate acquired no rights entitling appellant to force a sale and conveyance.

The judgment is affirmed.

All concur.

**3.** Appellants' contention also finds no support in the legislative history of the section in question. House Bill No. 30, which was the origin of the 1955 Probate Code, did not originally contain subsection 2 of Section 473.317 (designated Section 121, page 58 of the bill). In a presentation to the Senate Judiciary Committee of the 68th General Assembly, the St. Louis Fiduciaries' Association offered suggested amendments to the code and at page 58 of its report commenting on Section 121, stated:

"It seems appropriate at this point to consider options to purchase property (real or personal) belonging to the decedent. Thus it is now quite common for officers of corporations to have limited stock options *exercisable by their executors or administrators as well as by themselves.*" (Emphasis added.)

There followed suggested language of a new subsection which was adopted verbatim by amendment and is now the content of Section 473.317(2). It thus appears that options in contemplation by the authors of the subsection were those already preserved by their terms for the benefit of the optionee's estate but for which no procedural vehicle had been included in the probate code draft.