[Nos. 9504–5–III; 9767–6–III.   Division Three.   May 31, 1990.]

*In the Matter of the Estate of*
RAYMOND J. NIEHENKE.

CATHERINE A. MIDTHUN, ET AL, *Respondents*, v. ELMER
GUSKE, ET AL, *Appellants.*

*Kelly N. Brown* and *Irwin, Myklebust, Savage, Brown & Esser, P.S.; Wesley Nuxoll* and *Nuxoll, McBride & Libey,* for appellants.

*Martin G. Weber* and *Lukins & Annis,* for respondents.

SHIELDS, J.—Elmer and Alvin Guske, as beneficiaries of the estate of their uncle, Raymond Niehenke, appeal a superior court order authorizing the children of Francis Niehenke, deceased, to succeed to Francis' option to purchase certain property of the Raymond Niehenke estate under the anti–lapse statute, RCW 11.12.110. We affirm.

Raymond J. Niehenke, a bachelor, died on February 12, 1987. His nephew Francis Niehenke, father of the respondents herein, predeceased him by 7 years.

In article 4 of his last will and testament dated November 17, 1969, Raymond Niehenke gave, devised and bequeathed three options to certain nephews to purchase estate farm property. The sale price to be paid by each optionee for each farm totaled $102,000: "Home Place", $52,000; Johnson place, $27,000; and, Flamoe place, $23,000. The optionee for the "Home Place" was Francis Niehenke; for the Johnson place, Edward Niehenke;[1] and for the Flamoe place, Alvin Guske. There is no dispute as to the exercise of the options for the Johnson and Flamoe property.

---

[1] Edward Niehenke also predeceased his uncle, leaving no surviving children. His option therefore lapsed and Alvin Guske succeeded to it.

With respect to the "Home Place", the will provided that "[i]n the event my nephew, FRANCIS NIEHENKE, does not exercise said option as hereinafter provided, my nephews, ALVIN GUSKE and ELMER GUSKE, shall have the option to jointly purchase said farmland upon the same terms and conditions." If Alvin and Elmer Guske did not elect to exercise the option, article 4 further stated that the residuary beneficiaries, 11 nieces and nephews named in article 5, would have the right to purchase the property with the sale going to the highest bidder. The sale proceeds of the farms were to be proportionately paid under article 4 to specific charities designated in article 3. When the charitable gifts, totaling $62,500, were satisfied, the balance of the sale proceeds was to be paid equally to the residuary legatees in article 5 of the will, "or their respective issue by right of representation."

Francis Niehenke's six children informed the attorney for the estate of their intent to exercise Francis' option under article 4 of the will, as did Alvin and Elmer Guske. Both parties also claimed they were entitled to crop proceeds grown upon the property in 1987 and 1988. This action followed.

Following a hearing on May 6, 1988, the court concluded that since death prevented Francis J. Niehenke from exercising his option, his children succeeded to it by inheritance and operation of the anti-lapse statute, RCW 11.12.110.[2] In a subsequent order, the court concluded that Francis Niehenke's children were entitled to the landlord's share of all crops and receipts from the sale of crops, together with the

---

[2]RCW 11.12.110 states:

"When any estate shall be devised or bequeathed to any child, grandchild, or other relative of the testator, and such devisee or legatee shall die before the testator, having lineal descendants who survive the testator, such descendants shall take the estate, real and personal, as such devisee or legatee would have done in the case he had survived the testator; if such descendants are all in the same degree of kinship to the predeceased devisee or legatee they shall take equally, or, if of unequal degree, then those of more remote degree shall take by representation with respect to such predeceased devisee or legatee. A spouse is not a relative under the provisions of this section."

receipts from any government programs and payments in connection with the raising of crops for the years 1987 and 1988. The court held the estate was entitled to be reimbursed for its respective expenditures for real property taxes, fertilizer and fire insurance. This appeal followed.

The issues presented are whether the court erred in concluding Francis Niehenke's children have the right (1) to exercise the option to purchase the "Home Place", (2) to crop proceeds for the years 1987 and 1988, and (3) to an award of fees and costs.

■■ The rule in construing a will is to give effect to the testator's intent, after a careful review of the language of the will and after considering it in its entirety. *In re Estate of Bergau,* 103 Wn.2d 431, 435, 693 P.2d 703 (1985). A presumption arises in favor of the operation of the anti–lapse statute. *In re Estate of Button,* 79 Wn.2d 849, 854, 490 P.2d 731, 47 A.L.R.3d 352 (1971) (construing an inter vivos trust). The burden of showing that the statute should not operate is upon the party contending it should not; all doubts are to be resolved in favor of the normal operation of the statute, which is to be liberally construed. *In re Estate of Allmond,* 10 Wn. App. 869, 871–72, 520 P.2d 1388, *review denied,* 84 Wn.2d 1004 (1974) quotes 57 Am. Jur. *Wills* § 1436 (1948) in this regard:

> The general rule is that when a devise would be affected by an anti–lapse statute, an intent on the part of the testator to preclude the operation of the statute must clearly be shown.
> Recognition of the effectiveness of a contrary testatorial intention to exclude the operation of a statute designed to prevent lapses is found in many decisions, but the position is frequently taken that such an intention must be clearly proved and all doubts resolved in favor of the operation of the statute, and that the presumption is in favor of the normal operation of the statute and against any construction of the will having the effect of defeating the enactment.

(Footnotes omitted.) 57 Am. Jur. *Wills* § 1436 (1948); *Nicholson v. Fritz,* 252 Iowa 892, 109 N.W.2d 226 (1961).

The initial question is the characterization of the testamentary option. Legal scholars have recognized four types of testamentary options: (1) a personal right to purchase;

(2) a gift by implication; (3) an option which grants an election; and (4) a bequest on condition.

A personal right to purchase exists if the intent of the testator, as evidenced by the four corners of the will, is to restrict the right to exercise the option to the named legatee only. This type of option remains unaffected by an anti–lapse statute. *See In re Estate of Nowell,* 607 S.W.2d 792, 18 A.L.R.4th 572 (Mo. Ct. App. 1980);[3] *see also Valley Bank & Trust Co. v. Williams,* 46 Ariz. 20, 46 P.2d 645 (1935); *Williams v. Cowan,* 226 Ga. 319, 174 S.E.2d 789 (1970); *Weitzmann v. Weitzmann,* 87 Ind. App. 236, 161 N.E. 385 (1928); *In re Estate of Lemke,* 216 N.W.2d 186 (Iowa 1974); *In re Estate of Sifferman,* 603 S.W.2d 30 (Mo. Ct. App. 1980); *Austin Presbyterian Theological Seminary v. Moorman,* 391 S.W.2d 717 (Tex.), *cert. denied,* 382 U.S. 957 (1965); Annot., *Testamentary Option To Purchase Estate Property as Surviving Optionee's Death,* 18 A.L.R.4th 578 (1982).

The second type of option, a gift by implication to the optionee and his heirs, is found if the testator's intent, as evidenced by the four corners of his will, is to allow the option to be exercised, not only by the named optionee, but also by his heirs. This option is also unaffected by the anti–

---

[3]In *Nowell,* the son was given the right to purchase a tract of real estate from his father's estate. The son died 6 days *after* the death of the father. There was no evidence the son had knowledge of the option before he died or, if so, what his intention with respect to exercising the option may have been. The son's personal representative attempted to exercise the option claiming it as an asset of the son's estate, based upon the application of a Missouri statute which referred specifically to the right of a decedent's estate to exercise a purchase option owned by a decedent at the time of death. The court declined to construe the option as conferring a substantive property right after consideration of its legislative history, finding it was procedural and operated only if the option specifically provided it extended to the heirs and assigns of the optionee. Because the will provided specifically "'[i]t is my will that my son, Roy O. Nowell, shall have the right to purchase my forty (40) acre tract of land . . .", the right was held personal to him and terminated upon the son's death. *Nowell,* at 794. Additionally, the court noted the will provided in the event the son did not exercise the option, the farm was to be sold and the proceeds divided among the father's children and the survivors of them. The facts did not raise, and the court did not address, the effect of an anti–lapse statute.

lapse statute, because the will accomplishes by its own language what the statute was intended to do. *See Stern v. Stern,* 410 Ill. 377, 102 N.E.2d 104, 28 A.L.R.2d 1158 (1951);[4] *Miller v. Trigg Cy. Farmers Bank,* 312 Ky. 321, 227 S.W.2d 429 (1950).

The third type of option is one which grants an election: a gift, coupled with a privilege to take it in another form. The anti–lapse statute will affect this type of option unless there is evidence in the will to the contrary. *See Mason v. Mason,* 194 Iowa 504, 188 N.W. 685 (1922).[5] Compare *In re Ludwick's Estate,* 269 Pa. 365, 112 A. 543 (1921) which did not involve an anti–lapse statute.

The fourth type of option is the bequest on condition. The anti–lapse statute will affect this type unless there is evidence in the will to the contrary. The legal effect of this type of option is that the optionee and his heirs take under the will (if the condition is met) and not as vendees. The cases construing this type of option reflect an intent by the testator to garner liquidity in order to make special bequests or to gather additional funds for the residuary legatees, thus, to some extent, equalizing the shares of all of the legatees. *See* 6 W. Bowe & D. Parker, *Page on Wills*

---

[4]In *Stern,* the predeceased son of the testator was given a right to purchase property. The residuary clause of the will provided any gift to a child dying before the testator would go to that child's descendants. In the cases which deal with the testamentary option as a gift by implication, an anti–lapse statute is not involved' because a specific provision for survivors is included in the will itself.

[5]In *Mason,* 194 Iowa at 505, the testatrix gave her son $2,000 and provided, at his election, "I give and bequeath to him in lieu of such sum, if he so elects, . . ." certain described real estate. The son predeceased the testatrix. His heirs asserted their right to exercise the option, although not a devise or bequest upon condition. Applying the anti–lapse statute, the court held the testamentary gift was the right of choice between the money and the land and the right of choice by itself was a valued inheritable property right. *Mason,* 194 Iowa at 505.

§ 51.15 (1962); *In re Estate of Quigley,* 37 Misc. 2d 320, 236 N.Y.S.2d 180 (1963).[6]

In *Tuecke v. Tuecke,* 257 Iowa 199, 131 N.W.2d 794, 795 (1964), by will, the testator devised and bequeathed a one–third interest in his estate to each of three children. He further provided that his son have the option to purchase the two–thirds interest in the farm not already devised to him for $10,000, "and such right or option is herewith devised and bequeathed to him.'" *Tuecke,* 257 Iowa at 201. The son died a few hours before his father. The question was whether the anti–lapse statute would control; the problem was that the farmland was worth considerably more than the option price. The court held the option to be a "valuable property right which was inherited" within the meaning of the anti–lapse statute. *Tuecke,* 257 Iowa at 205. The court further noted at page 205:

> It is apparent that he [the testator] wanted Alfred [the son] to have the right to purchase the farmland at a fixed price. But it is thought that he would not have wanted Alfred's heirs to have that same right. It is sufficient answer to point out that if Alfred had survived and had exercised the option, it would, in all probability, have eventually inured to the benefit of his heirs; and the testator must have been aware of this when he

---

[6]In *Quigley,* the court considered whether the surviving children of a deceased son could exercise two testamentary options under his mother's will. The first option gave the deceased son the right to purchase the mother's business at 90 percent of its value; the second option gave him the right to purchase other real estate at a stated price, if he gave a bond and mortgage for one–half that price to his sister, with interest, payable in 5 years. The court preliminarily noted that the testatrix is presumed to have had knowledge of all the statutory provisions applicable, including the anti–lapse statute. Extrinsic evidence supported the mother's intent as to the first option, which would otherwise have been personal, that her son and his heirs should carry on the business in the family name. With respect to the second option, the court determined (1) the right was connected to specific land owned, described and devised by the testatrix, and (2) words of inheritance were not needed in the will because of the operation of the New York anti–lapse statute. Thus, both options can be characterized as bequests upon a condition. There being no evidence that the anti–lapse statute should not control, the deceased son's heirs were allowed to exercise both options to purchase the real estate.

made his will. Application of the antilapse statute here gives Alfred's heirs the same rights directly which they would in the course of time have received indirectly if he had lived.

The testator is presumed to have known of the statute.

The court then concluded the will did not manifest a sufficient contrary intent to defeat the application of the anti-lapse statute.

■ Here, as in *Quigley* and *Tuecke,* the testator's will used words of devise and bequest, making a gift of property, upon a condition. Three nephews were given an option to buy a farm at a price determined by the testator in 1969, without reference to market value. Before title to the property vested in the optionees by operation of the will, they were required to pay the stated price for each piece of property and the proceeds were then distributed to the charitable and residuary legatees. The record discloses 7 years elapsed between the date of Francis' death and the date of the testator's death. Thus, it can be presumed that had the testator intended a result contrary to the operation of the anti-lapse statute, he would have amended his will by the addition of a common testamentary phrase, "should he survive me". *See In re Estate of Allmond,* 10 Wn. App. 869, 872, 520 P.2d 1388, *review denied,* 84 Wn.2d 1004 (1974).

The naming of second optionees does not constitute an alternate bequest in the event of the death of Francis, which would ignore the ambulatory nature of testamentary instruments. *Allmond,* at 873. The event which would trigger the alternate optionees' right to purchase the property was not Francis' death, but Raymond's death and the subsequent failure of Francis' heirs to exercise their option. Thus, the testator was reasonably assured the farm would remain in his family.

Additionally, the testator's failure to name Francis' children as alternative purchasers in the event the first and second option holders failed to purchase the property is not determinative. The law requires this court to assume the testator was aware of the anti-lapse statute and recognized

that Francis' children had already been provided for by its operation. Were the dissent to prevail, Francis' issue would be disinherited, but the issue of the other named nieces and nephews in the residuary clause would not. Those grandnieces and grandnephews would take the share of a deceased parent named in the residuary clause by right of representation. Thus, application of the anti–lapse statute assures Francis' family is not disinherited by operation of the testator's will.

■ Because the option was timely exercised but the estate refused to close the sale transferring title and possession of the property to Francis' children, they are entitled to the proceeds of the harvested crops which would have accrued in August, some 4 months after the option was exercised. Thus, they should have been landlords at the time of harvest and entitled to the landlord's one–third share. *In re Estate of Machlied,* 60 Wn.2d 354, 374 P.2d 164 (1962). Attorney fees should be borne by the estate. RCW 11.96.140.

The trial court is affirmed and the cause remanded for a determination of reasonable attorney fees.

THOMPSON, J., concurs.

GREEN, A.C.J. (dissenting)—The majority holds the naming of an alternate optionee does not defeat the application of the anti–lapse statute to the bequest to Francis Niehenke, who predeceased the testator by 7 years. I respectfully dissent.

Article 4 of Raymond Niehenke's will granted to his nephew, Francis Niehenke, the option to purchase on contract a parcel of farmland known as the "Home Place":

> I give, devise and bequeath unto the following relatives the option to purchase the farmlands as hereinafter set forth, upon the terms and conditions hereinafter provided:
> 1. My nephew, FRANCIS NIEHENKE, shall have the option to purchase on contract as hereafter provided, the farmland and buildings commonly described as the "Home Place" . . .
> . . . .

. . . In the event my nephew, FRANCIS NIEHENKE, does not exercise said option as hereinafter provided, my nephews, ALVIN GUSKE and ELMER GUSKE, shall have the option to jointly purchase said farmland upon the same terms and conditions.

Francis Niehenke died on March 7, 1980. Raymond Niehenke died on February 12, 1987, without changing his will.

The paramount duty of the court in construing a will is to give effect to the testator's intent. *In re Estate of Bergau,* 103 Wn.2d 431, 435, 693 P.2d 703 (1985). The testator's intention is to be ascertained from the language of the will, considered in its entirety. *Bergau,* at 435; *Saunders v. Callaway,* 42 Wn. App. 29, 708 P.2d 652 (1985).

Although in particular circumstances the anti–lapse statute will be presumed to apply, it has no application if the testator provides for an alternative disposition. *In re Estate of Button,* 79 Wn.2d 849, 854, 490 P.2d 731, 47 A.L.R.3d 352 (1971). A bequest will not lapse if saved by an "appropriate testamentary . . . provision." T. Atkinson, *Wills* § 140, at 777 (2d ed. 1953).

Here, Mr. Niehenke provided an alternative disposition for the "Home Place" farm. Therefore, the anti–lapse statute has no application.

Through his testamentary scheme, Mr. Niehenke sought not only to keep the "Home Place" farm in his family, but intended to do so "*for as long as possible.*" (Italics mine.) To accomplish his goal, Mr. Niehenke granted his *nephew* Francis Niehenke a first option, and if for any reason Francis did not exercise the option, then his *nephews* Alvin and Elmer Guske would have a joint option. In the event any of the three farm options in his will were not exercised, Mr. Niehenke's residuary clause provided 11 specifically designated *nieces* and *nephews* would have the right to bid on the property. The testator named only nieces and nephews as potential beneficiaries of his three farms. That is consistent with his expressed intention the farms remain in his family "as long as possible", an intent which would be frustrated if Francis' children, Mr. Niehenke's grandnieces

and grandnephews, were allowed to exercise their deceased father's option. Grandnieces and grandnephews are mentioned in the will only in the residuary clause, where they may take by representation. Presumably to ensure a continued interest in the farm property and to guarantee its retention by the family as long as possible, Mr. Niehenke provided that only the "highest bidder" among the residuary takers would have the right to buy the property.

The majority states its holding "assures Francis' family is not disinherited by operation of the testator's will." That is not our role. Mr. Niehenke's testamentary scheme demonstrates a careful and specific selection of certain beneficiaries, including charities, to take under his will. To the intentional exclusion of other family members, he devised to some beneficiaries, such as Edward Niehenke and Alvin Guske, more than one option to purchase. However, if Francis Niehenke or Alvin Guske did not exercise their options, Mr. Niehenke chose not to make any provision for their issue. In fact, neither Francis Niehenke nor Alvin Guske are named in the residuary. Additionally, Mr. Niehenke did not make any provision for his brothers and sisters, as well as several of his nieces and nephews. Our role is limited to construing the will to give effect to the *testator's* expressed intention. *In re Estate of Bergau, supra.* In this light, it is evident the testator was not concerned with the possibility that Francis Niehenke's children, as well as other family members, might be "disinherited" because he made no provision for them, even in the residuary; however, he expressly provided that Alvin and Elmer Guske would have the right to the "Home Place" if, for any reason, Francis did not exercise the option. The majority's failure to allow the alternate named beneficiaries to exercise the option frustrates Mr. Niehenke's intended testamentary plan.

Reliance by the majority on two out–of–state cases to support its application of the anti–lapse statute is misplaced. *In re Estate of Quigley,* 37 Misc. 2d 320, 236 N.Y.S.2d 180 (1963) and *Tuecke v. Tuecke,* 257 Iowa 199,

131 N.W.2d 794 (1964). Neither decision construes a bequest providing for an alternate beneficiary. In *Quigley,* the bequest provided:

> It is my desire and I likewise direct that my son, Harry Quigley, shall have the right, if he so desires to purchase the Quigley Block located on the southwest corner . . ..

*Quigley,* 37 Misc. 2d at 321. Harry Quigley predeceased his father and left two surviving children. Although the anti–lapse statute in *Quigley* was applied, that bequest is clearly distinguishable because it did not provide for an alternative disposition. Here, Alvin and Elmer Guske were named alternative takers in Mr. Niehenke's will. Similarly, in *Tuecke* the will provision stated:

> "'I further provide that my son, Alfred Tuecke, have the option and right to purchase the two–third (2/3rds) interest in my farm . . . and such right or option is herewith devised and bequeathed to him.'"

*Tuecke,* 257 Iowa at 201. Alfred predeceased his father. The testator in *Tuecke* failed to name an alternative taker and the anti–lapse statute was applied. Here, Mr. Niehenke named alternative takers and thus *Tuecke* is not persuasive. The remaining cases cited by the majority relate to other types of testamentary options, none of which are involved here. No decision is cited by the majority that applies an anti–lapse statute to the factual situation presented here.

The majority states that because 7 years elapsed between the death of Francis and Raymond Niehenke, it can be presumed had Raymond intended a result contrary to the operation of the anti–lapse statute, he would have revised his will. I find it more plausible that the testator believed he had named an alternative beneficiary and hence there was no need to revise the will.

Accordingly, I decline to apply a *legislative presumption* to contravene the intent of a testator when that intent is evidenced within the four corners of a will. Thus, in my

view, Alvin and Elmer Guske were entitled to exercise the option.

For these reasons, I dissent.

Review granted at 115 Wn.2d 1015 (1990).